In re David Michael APPLEBAUM and Laura Michelle Finley, Debtors.

Ronald R. Sticka, Chapter 7 Trustee, Appellant,

v.

David Michael Applebaum and Laura Michelle Finley, Appellees,

State of California, Intervenor.

BAP No. OR–09–1134–MkHPa.

Bankruptcy No. 08–63391.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted Without Oral Argument on Sept. 25, 2009.

Filed Dec. 18, 2009.

**686**

Ross Moody, Office of the Attorney General, San Francisco, CA, for State of California.

Before: HOLLOWELL, PAPPAS and MARKELL, Bankruptcy Judges.

## OPINION

HOLLOWELL, Bankruptcy Judge.

Debtors David Applebaum and Laura Finley ("Debtors") filed a petition under chapter 7 of the Bankruptcy Code[1] and claimed exemptions under the California exemption statute, which is applicable only to debtors in bankruptcy. *See* Cal.Civ. Proc.Code ("C.C.P.") § 703.140. The trustee Ronald R. Sticka ("Trustee") objected to the exemptions and argued that California's bankruptcy-only exemption statute violates the Supremacy Clause and the Uniformity Clause of the United States Constitution. The bankruptcy court overruled the Trustee's objections and concluded that California's exemption scheme is constitutional. We agree that California's bankruptcy-only exemption statute is not preempted by the Bankruptcy Code and does not violate the Uniformity Clause, and AFFIRM the decision of the bankruptcy court.

## FACTS

Debtors resided in California between July 2004 and April 2007. In April 2007, Debtors moved to Oregon, where they currently reside. When Debtors filed their chapter 7 petition on September 5, 2008, they appropriately claimed exemptions under California law, as provided by the domiciliary provisions in § 522(b)(3)(A). Specifically, on their Schedule C, Debtors claimed exemptions under C.C.P. § 703.140(b).[2]

---

1. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

2. We refer to the exemptions available under C.C.P. § 703.140(b) as California's bankrupt-

cy-only exemptions, because they only are available to debtors "in a case under Title 11 of the United States Code." C.C.P. § 703.140(a). California has another set of exemptions, C.C.P. §§ 704.010, et seq., that is not restricted to debtors in bankruptcy cases and may be applicable in bankruptcy if the

The Trustee objected to Debtors' claimed exemptions. He asserted that California's bankruptcy-only exemption statute is unconstitutional, referencing *In re Regevig*, 389 B.R. 736 (Bankr.D.Ariz. 2008) and *In re Lennen*, 71 B.R. 80 (Bankr.N.D.Cal.1987). Debtors, for their part, contended that the bankruptcy court should adopt the analysis set forth in *In re Morrell*, 394 B.R. 405 (Bankr.N.D.W.Va. 2008) *aff'd sub nom. Sheehan v. Peveich (In re Sheehan)*, 574 F.3d 248 (4th Cir. 2009), which rejected these constitutional challenges to a similar bankruptcy-only state exemption statute.

Under 28 U.S.C. § 2403(b), the bankruptcy court certified the matter to the California Attorney General, but the California Attorney General declined to intervene before the bankruptcy court. The bankruptcy court thereafter issued a memorandum decision overruling the Trustee's objections. Agreeing with *Morrell*, the bankruptcy court concluded that § 522(b)'s opt-out provision left ample room in the field of exemptions for a state to enact bankruptcy-only exemptions and that California's bankruptcy-only exemptions did not appear to conflict with the overall scheme of the Bankruptcy Code. The bankruptcy court also rejected the Uniformity Clause challenge.

The Trustee timely appealed. During the course of this appeal, we issued our own Certification pursuant to 28 U.S.C. § 2403(b) and the California Attorney General accepted the invitation to intervene. Debtors neither filed a brief nor otherwise actively participated in this appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

debtor does not make an election contemplat-

## ISSUE

Is California's bankruptcy-only exemption statute, C.C.P. § 703.140, unconstitutional because it violates either the Supremacy Clause or the Uniformity Clause of the Constitution?

## STANDARD OF REVIEW

■ We review the bankruptcy court's conclusions of law and questions of statutory interpretation de novo. *Drummond v. Urban (In re Urban)*, 375 B.R. 882, 888 (9th Cir.BAP2007).

## DISCUSSION

### I. Bankruptcy Exemptions

■ Upon filing a bankruptcy petition, all property of the debtor becomes property of the bankruptcy estate. 11 U.S.C. § 541. The debtor may then exempt certain property from the estate and remove that property from distribution to creditors. 11 U.S.C. § 522(d). Allowing debtors exemptions enables them to emerge from bankruptcy with adequate property to achieve the fundamental goal of the Bankruptcy Code, a financial "fresh start." *See In re Vasko*, 6 B.R. 317, 321 (Bankr. N.D.Ohio 1980) (citing legislative history).

> A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors. Exemption of property, together with the discharge of claims, lets the debtor maintain an appropriate standard of living as he or she goes forward after the bankruptcy case.

4 *Collier on Bankruptcy*, ¶ 522.01 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2009).

ed by C.C.P. § 703.140(a).

In exempting property from the estate, a debtor chooses between exempting the property protected by state or local law, or, exempting the property specified in § 522(d). 11 U.S.C. § 522(b)(1). A debtor cannot pick or choose among these options: he or she must elect the exemptions authorized by state law, or elect those afforded in § 522(d). However, a state may "opt out" of the federal exemption scheme and deny the debtor the option of taking the exemptions under § 522(d). 11 U.S.C. § 522(b)(2). Thirty-four states, including California, have opted out of the bankruptcy exemptions provided under § 522(d). *See* C.C.P. § 703.140; 4 *Collier on Bankruptcy*, ¶ 522.01[1]. Thus, a California debtor may claim only those exemptions provided by California law. *Id.*

Like several other states, California has two exemption statutes: one provides exemptions that apply to judgment debtors generally and the other applies only to debtors in bankruptcy proceedings. California's bankruptcy-only exemptions are similar but not identical to the federal bankruptcy exemptions. C.C.P. § 703.140(b); 11 U.S.C. 522(d). Among other things, California's bankruptcy-only exemptions include a "wildcard" exemption that is nearly double the wildcard provided in the Bankruptcy Code's exemptions. *Compare* C.C.P. § 703.140(b)(5) *with* 11 U.S.C. § 522(d)(5).

The Trustee contends, and the dissent agrees, that a state exemption statute that applies only in bankruptcy cases conflicts with the Bankruptcy Code and is, therefore, rendered invalid by the Supremacy Clause. Furthermore, the Trustee argues the separate scheme of exemptions applicable only to debtors in bankruptcy proceedings (and not generally available to all state residents) violates the Uniformity Clause.

## II. The Supremacy Clause and Preemption Doctrine

The Supremacy Clause provides that the "Constitution and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause and the doctrine of preemption, which implements it, operate to invalidate state statutes to the extent they are inconsistent with, or contrary to, the purposes or objectives of federal law. *Perez v. Campbell,* 402 U.S. 637, 652, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) ("[A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause."). A state law may be preempted when federal legislation expressly declares its intent to do so; when Congress has legislated comprehensively so as to "occupy the field" of regulation leaving no room for states to supplement federal law; or, when the state law actually conflicts with federal law. *La. Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986).

Congress has expressly authorized states to create bankruptcy exemptions when it empowered states to "opt out" of the federal exemption scheme under § 522(b)(1). 11 U.S.C. § 522(b)(1). Even so, "[a]bsent explicit preemptive language, Congress' intent to supercede state law altogether may be found from a 'scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room to supplement it.'" *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (*quoting Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)).

■ While federal bankruptcy law is pervasive and there is a strong federal interest in bankruptcy, particularly in light of its enumeration in the Constitution as an area where Congress has been granted plenary power to legislate, federal bankruptcy law is not so pervasive, nor is the federal interest so dominant, as to wholly preclude state legislation in the area.

■ Indeed, there are many instances in the Bankruptcy Code where Congress either has deferred to state law or has expressly and affirmatively incorporated state law into the bankruptcy scheme. *See Sherwood Partners Inc. v. Lycos, Inc.,* 394 F.3d 1198, 1201 (9th Cir.2005) (listing examples). Notably, states had their own insolvency and bankruptcy laws in the 19th Century, when Congress elected not to enact a federal bankruptcy statute. *See generally Sturges v. Crowninshield,* 4 Wheat. 122, 17 U.S. 122, 195–97, 4 L.Ed. 529 (1819) (holding that states were not precluded by the Constitution from passing bankruptcy and insolvency laws so long as Congress had not exercised its power to enact uniform bankruptcy laws). States, therefore, have retained the power to enact bankruptcy laws so long as they do not conflict with federal bankruptcy legislation. *Rhodes v. Stewart,* 705 F.2d 159, 163 (6th Cir.1983); *Matter of Sullivan,* 680 F.2d 1131, 1137 (7th Cir.1982). As a result, Congress has not occupied the field of bankruptcy regulation to the point of preempting state exemption statutes.

■ Therefore, the California bankruptcy-only exemption statute must *actually conflict* with the Bankruptcy Code in order to violate the Supremacy Clause. In order for a state law to be in actual conflict with federal law, it must frustrate the purpose of Congress: "The state law must in its effect, obstruct the basic objectives of the federal law." *In re Vasko,* 6 B.R. at 323. "Deciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." *Perez,* 402 U.S. at 644, 91 S.Ct. 1704.

■ Because § 522 specifically permits states to opt out of the federal exemption scheme and implement their own exemptions, several courts have concluded that no conflict exists when state exemption statutes differ from § 522(d) or other provisions of the federal bankruptcy laws. *See, e.g., Storer v. French (In re Storer),* 58 F.3d 1125, 1128–29 (6th Cir.1995) (states are empowered to create whatever exemptions they elect even if they are less inclusive or more restrictive than those in § 522(d)); *Sheehan v. Peveich,* 574 F.3d at 252 (§ 522(b)(1) is an express delegation to give the states the unrestricted authority to create exemptions); *In re Brown,* 2007 WL 2120380 *11 (Bankr.N.D.N.Y. July 23, 2007) (states that have opted out are not required to provide exemptions comparable, concomitant, or corresponding to the federal exemptions); *see also Granger v. Watson (In re Granger),* 754 F.2d 1490, 1492 (9th Cir.1985) (state that has opted out has considerable freedom in creating exemptions); *Talmadge v. Duck (In re Talmadge),* 832 F.2d 1120, 1126 (9th Cir. 1987) ("[S]tates are free to both create and limit exemptions for their residents without violating the Supremacy Clause."); *McManus v. Avco Fin. Serv. of La. (Matter of McManus),* 681 F.2d 353, 355 (5th Cir.1982) (§ 522(b) expressly grants the states broad discretion and open-ended opportunity to determine what property may be exempt.) Thus:

> to say that state exemption provisions providing [different exemptions] to debtors than the federal exemptions of section 522(d) are in "conflict" with either

the language of the Code or expressions of Congressional intent underlying it is simply inaccurate. If Congress has the power to permit states to set their own exemption levels, the [state exemptions] are constitutional.

*Matter of Sullivan*, 680 F.2d at 1137.

The Trustee, in this case, does not challenge the state's authority to adopt its own exemptions, but challenges the separate bankruptcy-only exemption statute. The constitutional analysis, however, is the same. Section 522(b) "allows the States to define what property a debtor may exempt from the bankruptcy estate that will be distributed among his creditors." *Owen v. Owen*, 500 U.S. 305, 306, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). This delegation to the states is broad:

> If a state opts out [of the § 522(d) federal exemptions], then its debtors are limited to the exemptions provided by state law. Nothing in subsection [522](b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemption at all.

*Id.* at 308, 111 S.Ct. 1833.

Section 522(b)(3)(A) defines exempt property as "*any* property that is exempt under federal law, . . . or State or local law that is applicable" at the petition date in the place the debtor is domiciled. 11 U.S.C. § 522(b)(3)(A) (emphasis added). Congress did not limit the exempt property to a state's "applicable non-bankruptcy law" (as it did in § 522(b)(3)(B) regarding property held in tenancy by the entirety.) *See Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (where Congress includes particular language in one section of a statute but omits it from another, it is presumed that Congress acted intentionally and purposely). Therefore, there is simply no requirement that the state or local law referenced in § 522(b)(3)(A) be the same as the law that applies to non-bankruptcy debtors. *See Sheehan v. Peveich*, 574 F.3d at 252 (Congress did not restrict the states' authority to adopt exemptions with a requirement that exemptions apply equally to bankruptcy and non-bankruptcy cases). As a result, a separate bankruptcy-only exemption scheme is not in and of itself preempted by the Supremacy Clause.[3]

The Fifth Circuit has held that the language of § 522(b) "implicitly indicates a state may exempt the same property in 522(d), more property than that included in 522(d) or less property than that. In fact states may also prescribe their own requirements for exemptions which may either circumscribe or enlarge the list of exempt property." *Matter of McManus*, 681 F.2d at 355–56.

We note that Congress knows how to remedy what it perceives to be problems with state exemption laws that differ from the Bankruptcy Code. In 2005, Congress changed the domiciliary requirements for exemption purposes in order to curb the so-called "mansion loophole," in which a debtor would move to a state with a more generous homestead exemption statute prior to filing bankruptcy. *See, e.g.,* 11 U.S.C. § 522(b)(3)(A); *In re Urban*, 375 B.R. 882, 889 (9th Cir.BAP2007). Thus, if Congress perceives problems with a bank-

---

**3.** The dissent argues that because, in this case, the application of the California bankruptcy-only exemption statute results in creditors receiving less than under the federal exemptions, that California's bankruptcy-only statute conflicts with federal bankruptcy policy. But, arguably any separate state exemption statute whether "general" or "bankruptcy-only" may conflict with either the bankruptcy policy of a fresh start, or of a ratable distribution to creditors. That is the inevitable result of the "opt out" provision of § 522(b).

ruptcy-only exemption statute that provides different exemptions than the federal exemptions, it can act to curtail the use of such exemptions.

One of the primary purposes of bankruptcy is to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (principal purpose of bankruptcy is to grant a fresh start to the "honest but unfortunate" debtor). The fresh start policy is implemented by allowing the individual debtor to exercise exemptions, which are intended to provide the debtor with an appropriate standard of living post-bankruptcy. *See In re Brown*, 2007 WL 2120380 at *4–6 (discussing the evolution of the concept of the fresh start through legislative history). In providing for a fresh start, the Bankruptcy Code provisions convert the debtor's estate into cash for distribution to creditors. *Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 215, 62 L.Ed. 507 (1918) (main purpose of bankruptcy is to give a fresh start free from certain debts after property is administered and distributed to creditors).

Similarly, the purpose of the California exemption statutes is to "save debtors and their families from want by reason of misfortune or improvidence." *Little v. Reaves (In re Reaves)*, 285 F.3d 1152, 1156 (9th Cir.2002) *citing Turner v. Marshack (In re Turner)*, 186 B.R. 108, 113 (9th Cir. BAP1995). The California bankruptcy-only exemption statute allows a bankrupt debtor the opportunity to claim exemptions in order to preserve his or her fresh start. *Id.* at 1157.

Several courts have examined the legislative history and historical context of C.C.P. § 703.140 and its companion statute, C.C.P. § 703.130, and have concluded that it was intended to prevent joint debtors from "stacking" exemptions, by having one debtor choose the federal bankruptcy exemptions under § 522(d) and having the other choose generally-applicable state exemptions. *Baldwin v. Marshack (In re Baldwin)*, 70 B.R. 612, 615 (9th Cir. BAP1987); *In re Regevig*, 389 B.R. at 738–39; *In re Lennen*, 71 B.R. at 81–82.

Thus, the California exemption statutes reflect the state's desire to allow a debtor to retain only certain property deemed necessary for a fresh start, while leaving the remaining property in the estate for distribution to creditors. California's bankruptcy-only exemptions are very similar to the federal bankruptcy exemptions, providing California bankruptcy debtors the option of selecting those exemptions without allowing a stacking of federal and state exemptions. Congress effectively eliminated the practice of stacking in its 1984 amendments to the Bankruptcy Code. *See In re Regevig*, 389 B.R. at 739. Nevertheless, even if one of the original legislative purposes (anti-stacking) for the California bankruptcy-only exemptions has been otherwise accommodated by a change in the Bankruptcy Code, the underlying purpose of the exemption statute to provide a bankruptcy debtor a fresh start remains.

There is no conflict between the purpose and goals of the Bankruptcy Code and the California bankruptcy-only exemption statute. Simply because the exemptions differ from the federal exemptions (or from its non-bankruptcy counterpart), does not mean that such differences create a conflict that impedes the accomplishment and execution of the Bankruptcy Code. Therefore, for the reasons stated above, the

California bankruptcy-only exemption statute does not violate the Supremacy Clause.

### III. The Uniformity Clause

The Trustee contends California's bankruptcy-only exemptions violate the Constitution's Uniformity Clause under the reasoning of *In re Lennen,* 71 B.R. 80 (Bankr. N.D.Cal.1987). The court in *Lennen* found that C.C.P. § 703.140 violates the Uniformity Clause because the exemptions "apply *only* to a debtor in federal bankruptcy court; they are not available to a next-door neighbor who has not filed a bankruptcy petition." *Id.* at 83.

■ Congress is empowered to enact bankruptcy laws that must be uniform throughout the United States.[4] *Ry. Labor Executives' Ass'n v. Gibbons,* 455 U.S. 457, 469, 102 S.Ct. 1169, 71 L.Ed.2d 335 (1982). The uniformity requirement pertains only to Congress: it is an affirmative limitation or restriction upon Congress's power, not a limitation on the states. *Id.* at 468, 102 S.Ct. 1169.

States initially had concurrent power to pass laws on bankruptcy because there was no federal bankruptcy law. *Sturges v. Crowninshield,* 4 Wheat. 122, 17 U.S. 122, 156–57, 4 L.Ed. 529 (1819); *Hanover Nat'l Bank v. Moyses,* 186 U.S. 181, 187, 22 S.Ct. 857, 46 L.Ed. 1113 (1902). As discussed above, the states have the authority to enact exemption laws even if they produce varying effects on its citizens, so long as the laws do not conflict with federal law. *In re Shumaker,* 124 B.R. 820, 826 (Bankr. D.Mont.1991).

■ It is a well-established principle that Congress may recognize, in bankruptcy, state laws even where that recognition results in disparate treatment of debtors and creditors because of the differences in law between the states. *Ry. Executives' Ass'n v. Gibbons,* 455 U.S. at 473, 102 S.Ct. 1169. As the Supreme Court explained:

Notwithstanding this requirement as to uniformity the Bankruptcy acts of Congress may recognize the laws of the state in certain particulars, although such recognition may lead to different results in different states. For example, the Bankruptcy Act recognizes and enforces the laws of the states affecting dower, exemptions, the validity of mortgages, priorities of payment and the like.

*Stellwagen v. Clum,* 245 U.S. at 613, 38 S.Ct. 215.

■ The concept of uniformity requires that federal bankruptcy laws apply equally in form (but not necessarily in effect) to all creditors and debtors, or to "defined classes" of debtors and creditors. *See Ry. Labor Executives' Ass'n v. Gibbons,* 455 U.S. at 473, 102 S.Ct. 1169; *Blanchette v. Conn. Gen. Ins. Corp. (Reg'l Rail Reorganization Act Cases),* 419 U.S. 102, 159, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). For example, in *In re Urban,* this Panel concluded that the domiciliary requirements of § 522 do not violate the Uniformity Clause, even though they can lead to disparate effects among debtors residing in the same state, can lead to disparate effects between states, and can lead to disparate effects between the exempt property a debtor can keep inside bankruptcy versus what that debtor can keep outside of bankruptcy. 375 B.R. at 891.

■ The California bankruptcy-only exemption statute applies equally to all similarly situated debtors. Even though California residents in bankruptcy pro-

4. Under Article 1, section 8 of the U.S. Constitution (the Bankruptcy Clause), Congress has the power "To establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art I, § 8, cl. 4.

ceedings are allowed different exemptions from those not in bankruptcy, the bankruptcy-only statute is a permissible grant of the state's power to enact bankruptcy laws. *In re Shumaker* 124 B.R. at 826; *In re Vasko,* 6 B.R. at 320. Accordingly, the opt-out provision and corresponding California bankruptcy-only exemption statute apply uniformly to all debtors and all creditors in bankruptcy, and therefore, are sufficient to pass muster under the Uniformity Clause.

The Trustee argues that under California's bankruptcy-only exemption scheme, creditors might not receive the same assets that otherwise might be available to them under California's generally applicable exemption statute, or, than those allowed by federal law. However, that is exactly the result in a non-opt-out state when a debtor chooses the federal exemption scheme. In such instances, it may be that the bankruptcy trustee will not recover the same assets of a debtor for distribution that he or she would under state law.[5]

That the California bankruptcy-only exemption statute differs from the California general exemption statute does not create a sufficient conflict with federal law to violate the Uniformity Clause.[6] As discussed above, Congress, by adopting the opt-out provision in § 522(b)(1), expressly gave states the authority to exercise their bankruptcy powers to enact exemption schemes that differed from federal law.[7] As a result, the California bankruptcy-only exemption statute does not violate the Supremacy Clause.

## CONCLUSION

C.C.P. § 703.140 does not interfere with the purposes and objectives of the Bankruptcy Code and, therefore, it is not preempted. Furthermore, C.C.P. § 703.140 applies equally to all similarly situated debtors and creditors in bankruptcy and does not run afoul of the Uniformity Clause. Accordingly, the bankruptcy court's order overruling the Trustee's objections to the Debtor's claim of exemptions is AFFIRMED.

MARKELL, Bankruptcy Judge, dissenting:

I respectfully dissent. Section 703.140 of California's Code of Civil Procedure is an example of a state-enacted bankruptcy-only exemption statute that is fundamentally inconsistent with the Bankruptcy Code's distribution scheme. Contrary to the majority's holding, this actual conflict should lead to preemption of C.C.P.

---

**5.** *See In re Granger,* 754 F.2d 1490 (9th Cir. 1985) and *In re Talmadge,* 832 F.2d 1120 (9th Cir.1987) which held that a state that opts out of the federal exemptions of § 522(d) is not required to provide separate exemptions for married debtors. Thus, this is an instance where a bankruptcy trustee and creditors benefit from state exemption law because the federal exemptions apply separately with respect to each debtor in a joint case. 11 U.S.C. § 522(m).

**6.** To the extent these facts may support an equal protection argument, we decline to consider it, as it was not raised by the parties in the bankruptcy court nor in this appeal. We note, however, that other courts have addressed the issue with respect to bankruptcy-only exemptions and have found there to be an adequate rational basis for the discrimination. *See, e.g., In re Shumaker,* 124 B.R. 820 (Bankr.D.Mont.1991).

**7.** There is little legislative history on the opt-out provision of § 522(b)(1). *See Matter of Sullivan,* 680 F.2d at 1135–36; *In re Brown,* 2007 WL 2120380 at *5. But Congress did not define the scope of the state power or add limiting language to the statute to restrict the power of the state to develop and adopt its own exemption statutes that differed from the federal scheme. *See Owen v. Owen,* 500 U.S. at 308, 111 S.Ct. 1833.

§ 703.140, and reversal of the bankruptcy court's opinion.

One of the traditional goals of federal bankruptcy law is ratable distribution to creditors. *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.,* 547 U.S. 651, 667, 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006); *Young v. Higbee Co.,* 324 U.S. 204, 210, 65 S.Ct. 594, 89 L.Ed. 890 (1945). To achieve this goal, the Bankruptcy Code creates a comprehensive and intricate scheme designed to equitably distribute the debtor's nonexempt assets. *Sherwood Partners, Inc. v. Lycos, Inc.,* 394 F.3d 1198, 1203–04 (9th Cir.2005). When Congress acts in this area, pursuant to its delegated power under Clause 4 of Section 8 of Article I of the federal Constitution, it is well-settled that federal law has primacy over contrary state law, especially in the area of bankruptcy distribution. *See Am. Sur. Co. Of N.Y. v. Sampsell,* 327 U.S. 269, 272, 66 S.Ct. 571, 90 L.Ed. 663 (1946)("federal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors"); *Elliott v. Bumb,* 356 F.2d 749, 755 (9th Cir.1966) ("state creation of priorities in various classes of creditors ... would tend to thwart or obstruct the scheme of federal bankruptcy").

An essential component of the federal bankruptcy distribution scheme is the bankruptcy trustee's authority to collect the debtor's nonexempt assets for distribution to creditors holding allowed unsecured claims. *See Kanter v. Moneymaker (In re Kanter),* 505 F.2d 228, 231 (9th Cir.1974). State laws that attempt to withhold or shield assets that otherwise might be available to the trustee for distribution often interfere with the federal bankruptcy distribution scheme and, therefore, violate the Supremacy Clause. *See e.g. Sherwood Partners,* 394 F.3d at 1204–06 (holding state statute preempted when the statute authorized the assignee

under a general assignment for the benefit of creditors to bring an action to recover a preference, because the assignee's preference recovery potentially could diminish the assets available for collection by the bankruptcy trustee); *In re Kanter,* 505 F.2d at 230–31 (holding state statute preempted where the statute selectively "exempted" from bankruptcy estates, and only bankruptcy estates, personal injury recoveries); *Bumb,* 356 F.2d at 754–55 (holding state statute preempted where the statute recognized a "trust" in commingled funds held by debtors, because the trust effectively would create an impermissible preference in favor of the "beneficiary" creditor over the other creditors of the bankruptcy estate).

To be sure, Congress has left room in the federal bankruptcy distribution scheme for states to frame their own exemptions, applicable to all their citizens, and has explicitly made them applicable in bankruptcy. *See* 11 U.S.C. § 522(b)(3). These state-enacted general exemption statutes are a long-standing part of our federal bankruptcy system. *See Smalley v. Laugenour,* 196 U.S. 93, 97, 25 S.Ct. 216, 49 L.Ed. 400 (1905). However, the issue presented in this case is whether Congress extended this accepted authority to include the additional authority to frame bankruptcy-only exemptions; that is, state exemptions that apply if, and only if, the debtor is a debtor under the protection of the federal bankruptcy laws.

As a preliminary matter, the function and effect of generally-applicable exemptions is markedly different than that of bankruptcy-specific exemptions. Whereas general exemptions protect assets from levy and sale by all judgment creditors, bankruptcy-specific exemptions such as C.C.P. § 703.140(b) only protect assets from collection by the bankruptcy trustee.[1]

---

1. In fact, one could argue that state-enacted

bankruptcy-specific exemptions are not even

The majority decision holds there is no "conflict between the purpose and goals of the Code" and the distribution-altering bankruptcy-only exemptions at issue here. I disagree. Enactment of a statute that affects only debtors in bankruptcy, and which results in a distribution to that debtor's creditors unknown under either the Bankruptcy Code or the law applicable to other Californians, cannot help but create an actual conflict of the type Ninth Circuit precedent condemns.

The California statute at issue here not only conflicts with the present scheme in § 522(b), and thus is preempted, but it would have conflicted with the relevant provisions of the 1898 Act. Under the Bankruptcy Act of 1898, there were no federal exemptions whatsoever; rather, Congress entirely deferred to the states to frame exemptions for their residents. *See Smalley*, 196 U.S. at 97, 25 S.Ct. 216. As a result, the exemptions available to bankrupts under the Bankruptcy Act were only those that other similar debtors had under applicable nonbankruptcy law.

But even under the Bankruptcy Act, there were limits to the states' exemption-framing powers. This was recognized in *In re Kanter*, in which the Ninth Circuit held that federal bankruptcy law preempted another California exemption statute effective only against a trustee in bankruptcy. *In re Kanter*, 505 F.2d at 230–31. *In re Kanter* concluded that the California exemption statute violated the Supremacy Clause because: "it would operate to deny to the trustee assets which could ordinarily be reached in satisfying the claims of general creditors. [It] revives the race to the courthouse by creditors seeking to avoid the threat of having both their claims discharged and the assets necessary to satisfy them denied to the trustee."[2] *Id.* at 231. *In re Kanter* further noted that the state statute interfered with the trustee's federal statutory authority to exercise the same rights and powers as a judgment creditor would have under state law.[3]

*In re Kanter* should be binding precedent on this panel, yet the majority does not even mention it. Instead, the majority asserts that in 1978, after *In re Kanter* was decided, Congress intended to empower the states to enact bankruptcy-specific exemptions such as the one at issue here by its use of the phrase "State or local law" in § 522(b)(3)(A). According to the majority, Congress would have used instead the phrase "applicable non-bankruptcy law" in § 522(b)(3)(A) if it did not want states to frame bankruptcy-specific exemptions. The majority supports this assertion by pointing out that Congress used

covered in the definition of exemption that Congress has made applicable in bankruptcy. The term "exemption" is not defined in the Bankruptcy Code, but the courts traditionally have defined the term in a manner that would not cover state bankruptcy-specific exemptions. *See Smalley*, 196 U.S. at 97, 25 S.Ct. 216 ("The rights of a bankrupt to property as exempt are those given him by the state statutes, and *if such exempt property is not subject to levy and sale under those statutes*, then it cannot be made to respond under the act of Congress.")(emphasis added); *In re Kanter*, 505 F.2d at 230 (holding that a state exemption statute that restricts the trustee in bankruptcy, and only the trustee in bankruptcy, from recovering certain assets is not the type

of exemption that Congress recognizes in bankruptcy).

**2.** Similarly, California's current bankruptcy-specific exemptions operate to deny to the trustee Sticka over $3,400 in assets that can be reached by creditors outside of bankruptcy.

**3.** These powers are commonly referred to as the trustee's "strong-arm powers," and they facilitate the trustee's collection of estate assets for eventual distribution to creditors. The current version of the trustee's strong-arm powers is codified in § 544 of the Bankruptcy Code.

the phrase "applicable non-bankruptcy law" in § 522(b)(3)(B), and thus we should give different locutions different interpretations. The argument then states that the only way to give these distinctive phrases distinctive meanings is if Congress meant to give the states the power to frame bankruptcy-only exemptions.

There is, however, a simpler, less-strained explanation for the use of the two different phrases. The term "applicable non-bankruptcy law" is a generic term Congress used in several places in the Bankruptcy Code to refer collectively to both federal non-bankruptcy law and state law. *See Patterson v. Shumate*, 504 U.S. 753, 758 & n. 2, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). In describing property that may be claimed as exempt in § 522(b)(3)(A), the statute starts by referencing "property that is exempt under *Federal law,* [which includes both federal bankruptcy and federal non-bankruptcy law] other than subsection (d) of this section." (emphasis added.) Having already included federal non-bankruptcy law, it would have been redundant drafting to use the generic term "applicable non-bankruptcy law."

This interpretation is supported by Congress' general intent with respect to the addition of federal exemptions in 1978. Section 522's legislative history leaves no room for doubt that Congress intended to retain states' existing exemption-framing rights, rather than expand them. Like many parts of the Bankruptcy Code, Congress extensively debated the proper treatment of exemptions.

In this debate, there were four major players, each with its own exemption scheme proposal.[4] The Commission on Bankruptcy Laws of the United States,

which was created by act of Congress in 1970, advanced the first proposal in 1973. Based on its assessment of existing exemption law, the Commission recommended that Congress enact exclusive federal exemptions. H.R. 31, 94th Cong. § 4–503 (1975), *reprinted in,* 7 A. Resnick & E. Wypyski, Bankruptcy Reform Act of 1978: A Legislative History (1979) (hereinafter "Reform Act History"), at pp. 146–51. The second participant was the National Conference of Bankruptcy Judges ("NCBJ"). The NCBJ's exemption proposal would have enabled debtors to choose between uniform federal exemptions or, in the alternative, their state's exemptions. H.R. 32, 94th Cong. § 4–503 (1975), *reprinted in,* 7 Reform Act History, at pp. 146–51. The third body to address the treatment of exemptions was the House of Representatives. Several versions of exemption treatment were introduced, but each version adopted an exemption approach similar to that proposed by the NCBJ; like the NCBJ bill, the House bills proposed to permit debtors to choose between a set of federal, bankruptcy-specific exemptions and their state's exemptions. *See* H.R.Rep. No. 95–595, at 126 (1977), *reprinted in,* 13 Reform Act History, at p. 126.

Finally, in 1977, the final player, the Senate, drafted its alternative to the House bill. This bill dismissed entirely the idea of a slate of federal exemptions. S. 2266, 95th Cong. § 522(b)(1)(A) (1977), *reprinted in,* 14 Reform Act History, at p. 97. Under the Senate alternative, "*[c]urrent law is retained in the area of exempt property,* which is property that the debtor may retain after bankruptcy for a fresh start. For this purpose, current law adopts the exemption law of the State in

---

4. For excellent legislative histories of the events leading up to the passage of § 522, *see In re Neiheisel,* 32 B.R. 146, 148–55 (Bankr. D.Utah 1983); Note, *The Preemption of Bankruptcy–Only Exemptions,* 6 Cardozo L.Rev. 583, 594–597 (Spring 1985).

which the debtor is resident." S.Rep. No. 95–989, at 6 (1978)(emphasis added).

The House and Senate reconciled their differences by way of the opt-out clause when they enacted § 522: "Section 522 of the House amendment represents a compromise on the issue of exemptions between the position taken in the House bill, and that taken in the Senate amendment.... The States may, by passing a law, determine whether the Federal exemptions will apply as an alternative to State exemptions in bankruptcy cases." 124 Cong. Rec. 32,398 (1978) (remarks of Rep. Edwards). Three other legislative comments were made regarding the compromise at the time of enactment: (1) "The code provides uniform Federal exemptions which may be selected by the debtor as an alternative to exemptions under State law unless State law forbids that choice." 124 Cong. Rec. 32,418 (1978) (remarks of Rep. Butler); (2) "In the area of exemptions, it was agreed that a Federal exemption standard will be codified but that the States could at any time reject them in which case the State exemption laws would continue to prevail." 124 Cong. Rec. 33,990 (1978) (remarks of Sen. DeConcini); and (3) "In the area of exemptions, we have won an important victory for the rights of States to determine exemptions for the debtors of their States, [sic] Reduced Federal exemptions will be provided by the law but States by legislation may elect not to have them apply [sic] their debtors." 124 Cong. Rec. 33,992 (1978) (remarks of Sen. Wallop).

These comments reveal that Congress viewed the opt-out clause merely as a means to allow the states to choose whether their residents would have access to the federal slate of bankruptcy exemptions enumerated in § 522(d). Further, the no-tion that any player harbored an undisclosed intent to expand state's exemption powers, and somehow succeeded in having it included in the legislation as enacted, is wholly inconsistent with the notion that § 522 constitutes a compromise of the respective positions originally taken by the House and Senate. Most importantly, the legislative history shows that none of the key players proposed or even considered expanding states' exemption-making powers to include an additional power to legislate exemptions only applicable in bankruptcy, other than to allow states to adopt (or not) the bankruptcy-only exemptions offered by Congress in § 522(d).

The only conclusion that one can draw from this examination is that Congress never intended § 522(b) to authorize states to enact bankruptcy-only exemptions.

In closing, even if the majority were correct in its interpretation, I question the wisdom of relegating the validity of state-enacted bankruptcy-only exemptions to a case-by-case analysis, without enunciating any test or guiding principles. Bankruptcy is a complex area and such an approach likely will leave states (and debtors and creditors in those states) with little concrete guidance in framing permissible exemption statutes. Further, that approach encourages a patchwork-quilt methodology to framing bankruptcy-specific exemptions; it is not difficult to imagine that the bankruptcy bench and bar, and the public we serve, ultimately will have to contend with hundreds of different exemption schemes, one slate from each state of generally-applicable exemptions, another slate from each state of bankruptcy-specific exemptions, and so on.

For the reasons set forth above, I dissent. I would reverse the bankruptcy court and strike down C.C.P. § 703.140 as

698

preempted under the Supremacy Clause.[5]

---

**5.** I have no problem with Part III of the majority's opinion dealing with the trustee's Uniformity Clause challenge.