NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                  )       BAP No.   NC-13-1365-KiDJu
                                        )
ERNEST LINCOLN BONNER, JR.,             )       Bk. No.   11-72110-WJL
                                        )
                  Debtor.               )       Adv. No.  12-4177
_____          )
                                        )
ELAINE W. WALLACE,                      )
                                        )
                  Appellant,            )
                                        )
v.                                      )       **M E M O R A N D U M**[1]
                                        )
ERNEST LINCOLN BONNER, JR.,             )
                                        )
                  Appellee.             )
_____          )

Argued and Submitted on February 20, 2014,
at San Francisco, California

Filed - March 6, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable William J. Lafferty, III, Bankruptcy Judge, Presiding

Appearances:     Appellant, Elaine W. Wallace, Esq., argued pro se;
                 Craig K. Welch, Esq. of the Law Office of Craig K.
                 Welch argued for appellee, Ernest Lincoln Bonner,
                 Jr.

Before:   KIRSCHER, DUNN and JURY, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant Elaine W. Wallace ("Wallace") appeals a summary judgment order avoiding her unperfected security interest under 11 U.S.C. § 544(a)(1)[2] and preserving it for the benefit of the estate. Because Wallace did not raise a genuine issue of material fact in opposition to the debtor's motion for summary judgment, we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Wallace's loans to debtor

Wallace, an attorney, met debtor Ernest Lincoln Bonner, Jr. ("Bonner") in approximately 1993 through her law firm employee. Bonner is a physician and also attended law school. Wallace's employee was Bonner's law school classmate. During their friendship, Bonner provided medical services to Wallace and her family, and he would occasionally stop by Wallace's law office and come to her home for dinner.

In October 1997, Bonner approached Wallace for a loan. According to Wallace, Bonner informed her that for the past few months he had been attempting to collect on previously uncollectible medical liens worth "hundreds of thousands of dollars." Bonner was confident he could collect on these debts, but told Wallace that he needed some money to tide him over during the process. Wallace, who represents federal employees in administrative proceedings, was reluctant at first, but after Bonner's repeated assurances that she would be protected from any loss, even if Bonner filed bankruptcy, Wallace agreed to make the

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

loan.

In exchange for the funds, on October 27, 1997, Bonner executed a promissory note payable to Wallace for $45,350.00 with 10% simple interest. The due date for the note was July 27, 1999. The note also purported to give Wallace a security interest in various medical and office equipment belonging to Bonner Medical Corporation — a one-time entity of Bonner's. Bonner allegedly told Wallace that she did not need to do anything further to protect herself; the note created an enforceable security interest, and all she had to do was put it away for safekeeping. Wallace claimed that she relied on Bonner's statements.

In January 1998, Bonner approached Wallace for a second loan. Bonner allegedly told Wallace that he was unable to collect on the medical liens, but that he was soon expecting money for services he had provided to Medi-Cal/Medicare patients, which was more than enough to pay back everything he owed her. After Bonner provided Wallace with the same assurances that she would be protected, Wallace agreed to make the second loan. In exchange for the second loan, on January 2, 1998, Bonner executed a similar promissory note payable to Wallace for $16,000.00 with 10% simple interest. The note purported to give Wallace a security interest in the same medical and office equipment, as well as Bonner's accounts receivable. As with the first note, Bonner allegedly told Wallace that she did not need to do anything further to protect herself from any loss.

Wallace never filed a UCC-1 Financing Statement ("UCC-1") with the California Secretary of State to perfect her security interest in the named collateral. According to Wallace's records,

-3-

over the course of thirteen years (1997-2010) Bonner paid Wallace a total of $53,400.00.

**B.    Bonner's instant bankruptcy case and adversary proceeding against Wallace**

Bonner filed an individual chapter 11 bankruptcy case on November 16, 2011.  No trustee has been appointed, and Bonner remains the debtor in possession.

Wallace filed an amended proof of claim asserting a secured claim for $127,094.94 and an unsecured claim for $70,183.74. Bonner did not object.  After Bonner filed the instant bankruptcy case, Wallace discovered through PACER that he had filed four previous chapter 13 cases, two in 1998 and two in 2008.  Wallace never received notice of any of Bonner's prior bankruptcies, either formally or otherwise, even though she was a creditor during these time periods.

### 1.    Bonner's adversary complaint

Bonner filed an adversary complaint against Wallace seeking to avoid her unperfected security interest in the accounts receivable and equipment under § 544(a)(1) and to preserve the avoided interest for the benefit of the bankruptcy estate under § 551.  In her answer, Wallace asserted several affirmative defenses, including that the debt was excepted from discharge under § 523(a)(2) based on Bonner's fraud.

In an attempt to settle the matter, on November 19, 2012, Wallace and Bonner filed a stipulation allowing Wallace a secured claim for $45,000.00 and allowing the remainder of her claim as an unsecured claim for $152,378.68.  No order was ever entered.  The bankruptcy court later stated at the hearing on Bonner's motion

-4-

for summary judgment that it denied the stipulation because Wallace had not provided anything to support an enforceable security interest in property of Bonner's estate.[3]

**2. Bonner's motion for summary judgment**

Bonner moved for summary judgment on his complaint ("MSJ"), arguing that no material facts were in dispute. Because Wallace had failed to perfect her security interest in the accounts receivable and equipment by filing a UCC-1, Bonner argued that he could assert his right as a hypothetical judicial lien creditor and avoid Wallace's unperfected security interest using the strong-arm provision of § 544(a)(1) and preserve that interest for the estate under § 551. A hearing was set for June 19, 2013.

In her amended opposition to the MSJ, Wallace contended that her affirmative defense no. 4 — that the loan debt was excepted from discharge under § 523(a)(2)(A) and (B) based on Bonner's fraud — precluded summary judgment. In her attached declaration, Wallace set forth facts to support a nondischargeability claim under § 523(a)(2)(A) and (B). Wallace asserted that she did not file a UCC-1 because of Bonner's assurances that she was protected from any loss, even if he filed bankruptcy, and that she did not need to do anything further to protect herself other than put the notes in a safe place. Wallace also argued that distributions in Bonner's bankruptcy case should follow California law. Specifically, because California law gives creditors with an unperfected security interest priority over an unsecured creditor's claim, Wallace argued that her claim should be given

---

[3] See Hr'g Tr. (June 19, 2013) 3:24-4:4.

-5-

priority over other general unsecured claims. Finally, Wallace contended that an equitable lien should be imposed because she had relied on Bonner's false representations that perfection was not required to protect her security interest, citing <u>Funk v. G.W. Custom Homes, LLC (In re Funk)</u>, 2011 WL 3300350 (9th Cir. BAP May 11, 2011)(unpublished).

In his reply, Bonner argued that even if Wallace's debt was excepted from discharge, the lien securing her claim would still be avoidable under § 544(a). Nonetheless, argued Bonner, the debt was dischargeable because the time to file a nondischargeability action had expired. In sum, Bonner argued that his conduct and liability were not at issue here. This was not an objection to Wallace's claim; this was an action to avoid her lien.

**3.  The bankruptcy court's ruling on the MSJ**

The hearing on the MSJ lasted approximately four minutes, with neither party offering oral argument. The bankruptcy court announced its ruling in favor of Bonner, finding that Wallace had not taken the proper steps to perfect her security interest, and the fact that Bonner "may or may not have made some statements that may or may not have been correct, that may or may not have supported a § 523(a)(2) complaint [was] neither here nor there." Hr'g Tr. (June 19, 2013) 4:7-12. Bonner's misstatements, which might have supported a § 523(a)(2) claim, did not create an affirmative defense to an avoidance action under § 544(a)(1), even though it might have supported a lawsuit against him, which Wallace never brought.

In the MSJ order entered on July 24, 2013, the bankruptcy court determined that a claim under § 523(a)(2)(A) was not a

-6-

cognizable affirmative defense to an avoidance action; the purpose of that statute had no relationship to the avoidance of an unperfected security interest. Therefore, because Wallace had not filed a UCC-1 with the California Secretary of State to perfect her security interest as against the rights of third parties, her interest was unsecured.

Alternatively, the bankruptcy court determined that even if a claim under § 523(a)(2)(A) were cognizable under the circumstances, Wallace's reliance was not justifiable. Bonner never represented that he would file the UCC-1 to perfect her security interest, and Wallace was a sophisticated party who had previous experience with bankruptcy cases and, prior to finalizing their agreement, vocalized her wish that Bonner protect her interests. As such, Wallace's professional and practical knowledge belied any reliance on Bonner to take the simple step of filing the UCC-1.

The bankruptcy court also determined that no grounds existed to impose an equitable lien on the estate's assets because Wallace had made no attempt to perfect her own interests. The court found Wallace's reading of In re Funk as "overly narrow" and that she had misstated the case's actual holding. In the court's opinion, In re Funk held that an equitable lien may not be imposed when the lienholder possessed other remedies at law to protect its interests.

The bankruptcy court entered a separate judgment on July 29, 2013, avoiding Wallace's security interest under § 544 and ordering that it be preserved for the benefit of the bankruptcy estate under § 551. Wallace's timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in granting summary judgment avoiding Wallace's unperfected security interest under § 544(a)(1)?

## IV. STANDARDS OF REVIEW

We review de novo the bankruptcy court's ruling on a motion for summary judgment, its interpretation of the Code, and its interpretation of state law. Trunk v. City of San Diego, 629 F.3d 1099, 1105 (9th Cir. 2011)(summary judgment); Hopkins v. Cerchione (In re Cerchione), 414 B.R. 540, 545 (9th Cir. BAP 2009) (interpretation of the Code and state law). We may affirm a grant of summary judgment on any ground supported by the record. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

## V. DISCUSSION

**A. The bankruptcy court did not err when it granted summary judgment avoiding Wallace's unperfected security interest, thereby rendering her claim an unsecured nonpriority claim.**

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Civil Rule 56(a), incorporated by Rule 7056. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of a material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are such facts as may affect the outcome of the case.

-8-

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Wallace raises several arguments for why Bonner was not entitled to summary judgment. We address each argument in turn.

**1. Section 544(a) and the California Commercial Code**

Section 544(a), the "strong-arm clause," gives a bankruptcy trustee special powers to set aside transfers or liens against property of the bankruptcy estate. Specifically, § 544(a)(1) "grants a trustee in bankruptcy 'the rights and powers of a hypothetical creditor who obtained a judicial lien on all of the property in the estate at the date the petition in bankruptcy was filed.'" *Neilson v. Chang (In re First T.D. & Inv., Inc.)*, 253 F.3d 520, 526 (9th Cir. 2001)(quoting *Brady v. Andrew (In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1331 n.2 (9th Cir. 1985) (citing § 544(a)(1)).[4] "'One of these powers is the ability to take priority over or "avoid" security interests that are unperfected under applicable state law . . . .'" *Id.* (quoting *In re Commercial W. Fin. Corp.*, 761 F.2d at 1331 n.2). "Avoiding such interests relegates them to the status of a general unsecured claim."[5] *Id.* (citing 5 COLLIER ON BANKRUPTCY ¶¶ 544.02, 544.05 (Lawrence P. King ed., 15th ed. rev. 2000)).

The applicable state law in this case, the California

---

[4] Although § 544 specifically gives avoidance powers only to a "trustee," § 1107(a) gives a chapter 11 debtor in possession all of the rights, powers and duties of a trustee, with certain exceptions not relevant to this case.

[5] A general unsecured claim is the same as an unsecured nonpriority claim.

-9-

Commercial Code[6] ("CAL. COM. CODE"), provides that an unperfected security interest is subordinate to the rights of a "lien creditor."  CAL. COM. CODE § 9317, subd. (a)(2).[7]  A security interest in accounts receivable and business equipment — i.e., personal property — is perfected by filing a UCC-1 with the California Secretary of State.  CAL. COM. CODE § 9310, subd. (a).[8]

Wallace concedes that she did not perfect her security interest in accordance with California law by filing a UCC-1.  As a result, Bonner, as a hypothetical lien creditor, could avoid Wallace's unperfected security interest pursuant to § 544(a)(1).

**2. The bankruptcy court did not err in determining that a claim under § 523(a)(2) could not be an affirmative defense to an avoidance action under § 544(a).**

Wallace contends that summary judgment was improper because she raised the affirmative defense of fraud under § 523(a)(2)(A) and (B), and the bankruptcy court erred in holding that such claims were not a cognizable defense to an avoidance action under § 544(a).

---

[6]  Unless otherwise noted, all references to Division 9 of the California Commercial Code are to such Division as it was revised and effective on Jan. 1, 2007.

[7]  CAL. COM. CODE § 9317, subd. (a)(2) provides, in relevant part:  "A security interest . . . is subordinate to the rights of . . . a person that becomes a lien creditor before the earlier of the time the security interest . . . is perfected, or one of the conditions specified in paragraph (3) of subdivision (b) of Section 9203 is met and a financing statement covering the collateral is filed."

[8]  CAL. COM. CODE § 9310, subd. (a) provides:  "Except as otherwise provided in subdivision (b) and in subdivision (b) of Section 9312, a financing statement must be filed to perfect all security interests and agricultural liens."  Wallace has not contended or shown that any exceptions noted above apply in this case.

Wallace has not cited, and we could not locate, any authority to support her contention that a nondischargeability claim under § 523(a)(2) can be raised as an affirmative defense to a trustee's avoidance action under § 544(a). The two statutes have no relationship with one another and serve entirely different purposes: nondischargeability of a debt versus avoiding a creditor's unperfected lien. Further, even if the debt to Wallace were deemed nondischargeable, Bonner as trustee could still have avoided her unperfected security interest. While an unfortunate situation, we are unable to apply § 523(a)(2) as an affirmative defense to the trustee's strong-arm powers under § 544(a). In the context of lien avoidance, either Wallace perfected her lien or she did not. Accordingly, we discern no error by the bankruptcy court.

Wallace takes issue with the bankruptcy court's silence as to her argument under § 523(a)(2)(B). Because a nondischargeability claim under any paragraph of § 523(a) could not support a defense to an action under § 544(a), the bankruptcy court did not need to address Wallace's argument and therefore did not err by not addressing it.

**3. Once her unperfected security interest was avoided, Wallace's claim became an unsecured nonpriority claim by operation of bankruptcy law and is not entitled to priority.**

Wallace contends that the bankruptcy court erroneously "converted" her claim into an unsecured nonpriority claim, even though California law gives priority to creditors holding unperfected security interests over creditors with unsecured claims. In other words, Wallace contends she has priority over

-11-

all other unsecured nonpriority creditors in Bonner's bankruptcy case.

We agree with Wallace that under California law, a creditor with an attached but unperfected security interest has priority over an unsecured creditor's claim. People v. Green, 125 Cal.App.4th 360, 377 (2004)(citing CAL. COM. CODE § 9201, subd. (a) and Bank of Stockton v. Diamond Walnut Growers, Inc., 199 Cal.App.3d 144, 155 (1988)). However, California priority law does not apply when it comes to distributions in bankruptcy.

Priority of distribution in bankruptcy is a question of federal, not state law. See Am. Sur. Co. of N.Y. v. Sampsell, 327 U.S. 269, 272 (1946)("[F]ederal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors."); Matter of Quanta Res. Corp., 739 F.2d 912, 920 (3d Cir. 1984)(state law regulating distribution of assets among creditors must give way to the "all-encompassing federal law of creditors' rights"); Sticka v. Applebaum (In re Applebaum), 422 B.R. 684, 694 (9th Cir. BAP 2009)(Markell, J., dissenting) ("[I]t is well-settled that federal law has primacy over contrary state law, especially in the area of bankruptcy distribution.") (citing Sampsell and Elliott v. Bumb, 356 F.2d 749, 755 (9th Cir. 1966)("state creation of priorities in various classes of creditors . . . would tend to thwart or obstruct the scheme of federal bankruptcy")); In re Macomb Occupational Health Care, LLC, 300 B.R. 270, 292 (Bankr. E.D. Mich. 2003).

Under federal bankruptcy law, Wallace has not shown that she is entitled to priority over other unsecured nonpriority creditors. She has made no argument that her claim fits under any

paragraph of § 507(a), and we see none under which it could apply. Accordingly, the bankruptcy court did not err in determining that Wallace's claim is an unsecured nonpriority claim.

**4. The bankruptcy court did not err in determining that Wallace had not shown any grounds to impose an equitable lien on the estate's assets.**

Lastly, Wallace argues that a material issue of disputed fact existed as to whether she set forth any grounds to support an equitable lien on the estate's assets. Namely, Wallace contends that she justifiably relied on Bonner's misrepresentations, which is why she did not perfect her security interest. In addition, she argues that the bankruptcy court erroneously interpreted In re Funk as holding that an equitable lien may not be imposed when the lienholder possessed other remedies at law to protect its interest, and, based on that erroneous interpretation, erred in concluding she was not entitled to an equitable lien because she could have filed a UCC-1, but failed to file one.

We do not disagree with the bankruptcy court's interpretation of In re Funk. Presumably, the only reason the court even discussed the case, which is unpublished and not even binding on this Panel, is because it was the only authority Wallace raised in her five-sentence argument as to why an equitable lien should be imposed. However, the bankruptcy court's interpretation of In re Funk is of no moment, since we are able to affirm its ruling on other grounds supported by the record. Balint, 180 F.3d at 1054.

Even if Wallace was entitled to an equitable lien and was granted one by the bankruptcy court, it would still be subordinate to Bonner's interest as a hypothetical judgment lien creditor and

-13-

avoidable. Palmer v. Wash. Mut. Bank (In re Ritchie), 416 B.R. 638, 646 (6th Cir. BAP 2009); In re Hendleman, 91 B.R. 475, 476 (Bankr. N.D. Ill. 1988)(equitable lien in debtor's property is by definition unperfected and can never survive attack by trustee); Hunter v. Ohio Citizens Bank (In re Henzler Mfg. Corp.), 36 B.R. 303, 306 (Bankr. N.D. Ohio 1984)("[E]ven if MFG could claim an equitable lien it would nevertheless be subordinate, under the relevant provisions of UCC, to a subsequent legal lien of a judgment creditor and is invalid against the Trustee in this case who has asserted his hypothetical lien creditor status under § 544(a)(1)."); Hassett v. Revlon, Inc. (In re O.P.M. Leasing Servs., Inc.), 23 B.R. 104, 120 (Bankr. S.D.N.Y. 1982)("The legislative history of the Bankruptcy Code makes clear that Article 9 of the U.C.C. treats equitable liens as 'unperfected security interests which the trustee can in any case set aside.'"). Therefore, a trial on this issue would serve no purpose.

## VI. CONCLUSION

Because the bankruptcy court did not err when it determined that no genuine issue of material fact existed, and that Bonner was entitled to summary judgment as a matter of law, we AFFIRM.

-14-