In re Stanley Vincent URBAN, Debtor.

Robert G. Drummond, Chapter 13 Trustee, Appellant,

v.

Stanley Vincent Urban; United States of America, Appellees.

BAP No. MT–07–1059–HBMo.
Bankruptcy No. 06–60045–13.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 20, 2007.

Filed Aug. 29, 2007.

---

884

Robert G. Drummond, Great Falls, MT, Pro se, Chapter 13 Trustee.

Jeannine Lesperance, U.S. Department of Justice, Washington, DC, for United States of America.

Before: HOLLOWELL,[1] BRANDT and MONTALI, Bankruptcy Judges.

## OPINION

HOLLOWELL, Bankruptcy Judge.

The bankruptcy court issued a final order rejecting the Chapter 13 Trustee's challenge to the constitutionality of 11 U.S.C. § 522(b)(3)[2] and overruling the Trustee's objection to the Debtor's exemption claims based on California law. The Trustee appealed. We AFFIRM.

## FACTS

The Debtor, Stanley Vincent Urban ("Debtor"), resided in Montana when he filed a Chapter 13 Petition. Along with his Petition, he filed a Schedule C–Property Claimed as Exempt, listing the following amounts as exempt under Montana law:

| | |
|---|---|
| Homestead | $100,000 |
| Household Goods | 600 |
| Wearing Apparel | 600 |
| Guns/Sporting Goods | 600 |
| Jewelry | 600 |
| 2004 Dodge Stratus | 2,500 |
| Interest in Insurance Policy | 4,000 |
| Retirement Account | 3,522.87 |

The Chapter 13 Trustee ("Trustee") filed an objection to the exemptions. The basis of the objection was that, under § 522(b)(3),[3] the Debtor was not entitled to claim exemptions under Montana law because he had not been domiciled in Montana for the full 730–day period prior to filing his bankruptcy petition. The Debtor had moved to Montana from California, and the Trustee asserted that § 522(b)(3) required Debtor to claim exemptions under California law.

In response to the Trustee's objection, the Debtor filed an Amended Schedule C, claiming the following exemptions under California law:

| | |
|---|---|
| Homestead | $50,000 |
| Household Goods | 450 |
| Wearing Apparel | 450 |
| Guns/Sporting Goods | 925 |
| Jewelry | 1,150 |
| 2004 Dodge Stratus | 2,775 |
| Interest in Insurance Policy | 9,300 |
| Retirement Account | 3,522.87 |

1. Hon. Eileen W. Hollowell, Bankruptcy Judge for the District of Arizona, sitting by designation.

2. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, as revised by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, 119 Stat. 23.

3. An individual debtor may exempt certain property of the estate under § 522(b). Section 522(b)(3)(A) permits a debtor to exempt:

[A]ny property that is exempt under … State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single, State for such 730–day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period or for a longer portion of such 180–day period than in any other place.

The Debtor included the current market values for the property on both his original and amended schedules, as follows:

| | |
|---|---|
| Homestead | $153,000 |
| Household Goods | 625 |
| Wearing Apparel | 500 |
| Guns/Sporting Goods | 450 |
| Jewelry | 100 |
| 2004 Dodge Stratus | 9,000 |
| Interest in Insurance Policy | 650 |
| Retirement Account | 3,522.87 |

In addition, the Debtor's schedules indicated that he had $31,000 equity in his homestead (home valued at $153,000 less $122,000 debt) and no equity in his car (car valued at $9,000 with debt close to $11,000).

The Trustee then objected to the amended claim of exemptions. The basis of the second objection was that the domicile requirement of § 522(b)(3) violates the requirement in Article I, Section 8, Clause 4, of the United States Constitution that Congress enact uniform bankruptcy laws, because it requires the extra-territorial application of California's exemption law to a case filed in Montana. The Trustee argued that the Debtor should be required to use the federal exemptions in § 522(d), made available by the "catch-all" provision of § 522(b)(3).[4]

At the same time the Trustee filed his objection to the claim of exemptions in Debtor's Amended Schedule C, he filed a Motion for Certification of Claim of Unconstitutionality, as required by 28 U.S.C. § 2403 and Montana Local Bankruptcy Rule 9013–5. The court granted the Trustee's Motion and the United States's Uncontested Motion to Intervene to defend the constitutionality of § 522(b)(3).

In spite of the Trustee's objection to the application of the California exemptions and concomitant constitutional challenge, he consented to confirmation of the Debtor's Chapter 13 Plan ("Plan") without preserving his objection to Debtor's use of the California exemptions. The Plan was confirmed, applying the best interests test of § 1325(a)(4) based upon the California exemptions.[5]

The Trustee and the United States stipulated to the facts underlying the constitutional challenge.[6] The parties and the bankruptcy court assumed that claiming exemptions under California law resulted in a net gain to the Debtor of $6,130 in exempt assets that would not have been protected under Montana law. We do not agree with this assumption which, with the exception of the homestead exemption, was based upon the *maximum* amounts that could be claimed as exempt, rather than the actual value of the assets or the Debtor's equity in those assets. The analysis should have been based upon the Debtor's equity in the exempt assets—not on the maximum amounts potentially available.[7]

---

4. The last sentence of § 522(b)(3) provides: "If the effect of the domiciliary requirement under subparagraph (A) [§ 522(b)(3)(A)] is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d) [the federal exemptions]."

5. In a Chapter 13 case, exemptions are used to show what the debtor would claim as exempt if the case were a liquidation case and "allow the bankruptcy court to make an informed decision regarding the liquidation comparison" required by § 1325(a)(4). *Winchester v. Watson (In re Winchester)*, 46 B.R. 492, 494 (9th Cir. BAP 1984). Section

1325(a)(4) requires a showing that under the plan the unsecured creditors will receive no less than they would receive in a Chapter 7 liquidation.

6. The Trustee and the United States agreed that the Debtor properly claimed his exemptions under California law, as required by § 522(b)(3). *The Debtor did not participate* in the litigation regarding the Trustee's objection before the bankruptcy court or on appeal.

7. Section 522(d) exempts the debtor's interest in property—not the property itself. The value that can be exempted is the unencumbered

886

For example, the $275 difference in the car exemption between California and Montana law makes no difference because the Debtor reported no equity in his car and, therefore, had no interest which could be exempted.

Based upon the values claimed for the exempt assets in the Debtor's schedules, the value of Debtor's exempt assets is $200 less applying the California exemptions than under Montana's, and $11,550 less using the federal "catch all" exemptions allowed by § 522(b)(3), which the Trustee argues should apply.[8]

The bankruptcy court issued a Memorandum Decision overruling the Trustee's objection and holding that § 522(b)(3) does not violate the uniformity clause of the Constitution. The Trustee timely filed a Notice of Appeal.[9]

## ISSUES

1. Is the appeal moot?

2. Does § 522(b)(3) violate the uniformity clause of the Constitution by applying state exemption laws different than those of the forum state, when the debtor has not been domiciled in the forum state for 730 days immediately preceding the petition date?

## JURISDICTION

■ The Trustee challenges the extraterritorial application of California's exemption law to the Debtor's Chapter 13 case filed in Montana. Because the Debtor's Chapter 13 Plan has already been confirmed using California's exemptions

---

8. Below is a chart comparing the Montana, California and federal exemptions, as applied to the Debtor's scheduled property.

portion. Consequently, the amount of exemption available to a debtor is the lesser of either the equity in the property or the maximum amount of the applicable exemption. The bankruptcy court excluded Debtor's homestead exemption from the comparison be-

cause, although the maximum exemption available under Montana law is higher, the Debtor's equity of $31,000 was equally protected under either Montana or California law.

|  | SCHEDULED INTEREST IN FMV | MT | CA | FED |
|---|---|---|---|---|
| Homestead | $31,000 | $31,000 | $31,000 | $19,425* |
| Household Goods | 625 | 600 | 450 | |
| Wearing Apparel | 500 | 500 | 450 | 1,575** |
| Guns/Sporting Goods | 450 | 450 | 450 | |
| Jewelry | 100 | 100 | 100 | 100 |
| 2004 Dodge Stratus | 0 | 0 | 0 | 0 |
| Insurance Policy | 650 | 650 | 650 | 650 |
| Retirement Account | 3,522.87 | 3,522.87 | 3,522.87 | 3,522.87 |
|  |  | 36,822.87 | 36,622.87 | 25,272.87 |

* The federal homestead exemption is comprised of $18,450 (§ 522(d)(1)) + $975 (§ 522(d)(5)).

** Household goods, wearing apparel and guns/sporting goods are grouped together under § 522(d)(3).

9. In light of the Plan's confirmation, this panel issued an Order to Show Cause Why Appeal Should Not Be Dismissed As Moot. The Trustee timely filed a responsive brief. The Appellee chose not to file a brief on the mootness issue.

and the Trustee did not appeal confirmation of the Plan, the question arises whether the appeal is moot. *See Cohen v. Tran (In re Tran),* 309 B.R. 330, 338 (9th Cir. BAP 2004) (exemptions in Chapter 13 are "significant primarily in determining whether the plan meets the best interests test of § 1325(a)(4)"). We lack jurisdiction to hear a moot appeal. *Internal Revenue Serv. v. Pattullo (In re Pattullo),* 271 F.3d 898, 900 (9th Cir.2001).

The Trustee argues that the appeal is not moot because, *inter alia,* exemptions are "pertinent to a subsequent modification or conversion of the case to Chapter 7." We agree.

In a Chapter 13 case, a debtor's debts are discharged only upon the bankruptcy court's order after completion of the debtor's plan—not upon confirmation of the debtor's plan. 11 U.S.C. § 1328(a). A request for modification may be made "[a]t any time after confirmation of the plan but before the completion of payments under such plan." § 1329(a). The Debtor's thirty-six-month Chapter 13 Plan was confirmed on April 11, 2006, and may be modified before completion of the payments, which would require the bankruptcy court to apply the best interests test of § 1325(a)(4) again. *See* § 1329(b)(1). The exemption issue is "material" to a § 1325(a)(4) analysis. *Profit v. Savage (In re Profit),* 283 B.R. 567, 573 (9th Cir. BAP 2002), citing *McDonald v. Burgie (In re Burgie),* 239 B.R. 406, 411 n. 8 (9th Cir. BAP 1999).

The Trustee contends that the Debtor should use the federal exemptions, applying the "catch-all" provision of § 522(b)(3). If the Trustee's position prevails and the Debtor's Plan is modified under § 1329,[10] the Debtor would have to pay more to satisfy the best interests test of § 1325 because the value of his exempt assets is much less under federal law than under California law.

■ Further, this case may be converted to a Chapter 7 case by the Debtor at any time, § 1307(a), or by the court upon request by a party in interest or the United States Trustee, § 1307(c), (e). Because a Chapter 7 debtor would be entitled to his exemptions under § 522, the question of the amount of the exemptions that may be claimed is not moot.[11] *See In re Tran,* 309 B.R. at 338.

The Trustee also complains that under § 522(b)(3), the court—and presumably, the Trustee—"may have to examine in excess of fifty different exemption schemes, depending upon the residency of debtors filing in the district." If the Trustee prevails, he would have to apply only Montana or federal law.

Because the appeal is not moot, we will consider the case on the merits. The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158(c).

### STANDARD OF REVIEW

■ The parties have stipulated to the relevant facts; thus, all of the issues pre-

---

**10.** Under § 1329(a), the plan may be modified "upon request of the debtor, the trustee, or the holder of an allowed unsecured claim." We express no opinion as to whether the Trustee could seek modification, absent changed circumstances, in view of his earlier insistence that the Debtor claim the California exemptions and his subsequent recommendation that the Plan be confirmed.

**11.** If the case were converted, no party could object to the Debtor's exemptions unless he amended them following the conversion. *Smith v. Kennedy (In re Smith),* 235 F.3d 472, 477–78 (9th Cir.2000).

sented by this appeal are legal issues. We review conclusions of law and issues of statutory interpretation de novo. *Irwin Mortgage Co. v. Tippett (In re Tippett)*, 338 B.R. 82, 85 (9th Cir. BAP 2006).

## DISCUSSION

### A. *Introduction*

Article I, Section 8, Clause 4, of the United States Constitution grants Congress the power to "establish ... uniform Laws on the subject of Bankruptcies throughout the United States." The Trustee asserts that Congress violated the uniformity provision of the bankruptcy clause when it enacted § 522(b)(3) because, in cases like this one, the statute requires the application of exemption laws different from the laws of the state where the debtor's case was filed. As a result, creditors, including the Trustee, will not have the same access to the debtor's assets in bankruptcy that they would have outside of bankruptcy.

### B. *Bankruptcy Code's Exemption Provisions*

Section 522(b) authorizes individual debtors to exempt property from the bankruptcy estate. In Chapter 7 cases, exempt property is the only property that the debtors are entitled to keep. Although a Chapter 13 debtor is permitted to keep all of his property, he may claim the same exemptions as a Chapter 7 debtor. *See In re Tomasso*, 98 B.R. 513, 515 (Bankr. S.D.Cal.1989). As previously noted, ex-emptions are relevant in Chapter 13 as a factor in the best interests of creditors test of § 1325(a)(4). *In re Winchester*, 46 B.R. at 494.

Section 522(d) specifies the property that may be exempted from the debtor's bankruptcy estate. Under § 522(b)(1), the debtor may choose to exempt either the property listed in § 522(d) ("federal exemptions") or "any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable." The debtor may choose the federal exemptions in § 522(d) "unless the State law that is applicable to the debtor under subparagraph (3)(A) specifically does not so authorize." § 522(b)(2). This "opt out" provision, which makes the federal exemptions unavailable, has been adopted by a majority of states, including California[12] and Montana.[13] 4 Collier on Bankruptcy ¶ 522.02[1], p. 522–18 (15th ed. rev.2006).

The "State law that is applicable to the debtor" is determined by where the debtor was domiciled[14] for the 730 days (two years) immediately preceding the filing of bankruptcy. § 522(b)(3)(A). If the debtor was not domiciled in a single state during that period, then the applicable state law is that of the state in which the debtor was domiciled for the 180 days immediately preceding the 730–day period, or for the longest portion of that 180–day period. *Id.* The bankruptcy case may be filed where a debtor's domicile, residence or principal place of business has been for the

---

**12.** Cal.Civ.Proc.Code § 703.130 (2006) provides: "Pursuant to the authority of paragraph (1) of subsection (b) of Section 522 of Title 11 of the United States Code, the exemptions set forth in subsection (d) of Section 522 of Title 11 of the United States Code (Bankruptcy) are not authorized in this state."

**13.** Mont.Code Ann. § 31–2–106 (2005) provides in pertinent part: "An individual may not exempt from the property of the estate in any bankruptcy proceeding the property specified in 11 U.S.C. § 522(d)."

**14.** For purposes of § 522(b), "domicile" means actual residence coupled with a present intention to stay there. *See Lowenschuss v. Selnick (In re Lowenschuss)*, 171 F.3d 673, 684 (9th Cir.1999).

greater part of the 180 days prior to the petition date. 28 U.S.C. § 1408. If the domiciliary requirement renders a debtor ineligible for any state exemptions, the debtor may elect to use the federal exemptions pursuant to the "catch-all" provision of § 522(b)(3).

The combined effect of the 730–day domicile period for determining the applicable state exemption law and the 180–day period for determining venue is that the law for exemptions may be different from the law of the forum. In such a case, "the court must give effect to those exemptions allowed by the law of the state of domicile, and it makes no difference where the property is situated or where the petition is filed, so long as the property is exempt under the law of the domiciliary state." 4 Collier on Bankruptcy ¶ 522.06 at 522–41, citing, *inter alia, Arrol v. Broach (In re Arrol),* 170 F.3d 934, 936–37 (9th Cir.1999) (debtor domiciled in California for majority of domiciliary period under former § 522(b)(2)(A) is entitled to claim California exemption for residence located in Michigan).

## C. *The Constitutionality of the Domicile Requirement of § 522(b)(3)(A)*

▮ The focus of the Trustee's constitutional challenge is the statute's requirement that California's exemption law be applied in Debtor's Montana bankruptcy case because the Debtor did not live in Montana for two years before filing his bankruptcy petition. Section 522(b)(3)(A) was amended by BAPCPA to extend, from 180 days to 730 days, the time period in which a debtor must be domiciled in order to use the forum state's exemption laws.[15] The amendment was designed to curb the so-called "mansion loophole" in which

debtors contemplating bankruptcy would move to states with generous homestead exemption statutes. *See* Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R.Rep. No. 109–31, pt. 1, at 15–16, 109th Cong., 1st Sess. (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 102.

The Trustee relies heavily on the holding of *Hanover Nat'l Bank v. Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902), for the proposition that bankruptcy legislation violates the uniformity provision if it prevents a trustee from reaching a debtor's assets to the same extent those assets would be subject to the legal process of the forum state outside of bankruptcy. Because of the importance of the *Moyses* case to the Trustee's argument, a brief summary of the case is warranted.

Max Moyses gave a promissory note to a Mississippi bank, which assigned it to Hanover National Bank of New York ("Hanover"). After Moyses defaulted, Hanover obtained a judgment against him in Mississippi in 1892. Moyses then moved to Tennessee and filed for relief under the Bankruptcy Act of 1898, obtaining his discharge in August—one month after the Act became effective. After Moyses received his discharge, Hanover initiated an action in Tennessee to enforce its judgment, arguing that the discharge was a nullity because the bank had not been served with process nor had it appeared in the bankruptcy case, and the court had never acquired jurisdiction over the bank or the debt. Moyses demurred, and the case was dismissed based on the entry of his bankruptcy discharge. On writ of error to the Supreme Court, Hanover also argued, *inter alia,* that the Bankruptcy Act violated the bankruptcy clause because it author-

---

15. Before the bankruptcy court, the Trustee argued that the extended domiciliary requirement under BAPCPA was improper because it created a different time period from the venue statute, 28 U.S.C. § 1408. The Trustee abandoned that argument on appeal.

ized the filing of voluntary cases by persons who were not merchants or traders and because it was not uniform throughout the United States. As one commentator has noted: "It can only be inferred from the opinion that the uniformity argument hinged on the fact that the Act permitted exemptions to the extent provided by state law, even though no such exemptions were at issue in *Moyses*." Randolph J. Haines, *The Uniformity Power: Why Bankruptcy is Different*, 77 Am. Bankr.L.J. 129, 160 (2003) (footnote omitted).

Most of the *Moyses* opinion addresses the constitutionality of a law that permitted voluntary bankruptcy for non-merchants and non-traders, and whether the Bankruptcy Act's notice provisions satisfied due process. The exemption/uniformity argument is briefly addressed and rejected: "[T]he system is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each State whatever would have been available to the creditor if the bankrupt law had not been passed." *Moyses*, 186 U.S. at 190, 22 S.Ct. 857.

It is the above-quoted language, along with an earlier observation in the opinion that "uniformity is geographical and not personal,"[16] *id.* at 188, 22 S.Ct. 857, on which the Trustee relies to argue that the uniformity clause imposes a bright line rule requiring that a trustee receive as much in bankruptcy as he would outside of bankruptcy. However, *Moyses* did not involve an exemption claim by a debtor who had moved from another state to the forum state and is insufficient authority to support the Trustee's constitutional challenge, especially in light of subsequent Supreme Court cases interpreting the uniformity clause.

As noted by the bankruptcy court, the opinion in *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), is particularly instructive about the nature of the uniformity clause. Those cases, consolidated on appeal, involved a challenge to the Regional Rail Reorganization Act of 1973, which was passed to reorganize eight railroads in the northeast and midwest regions of the country. Creditors argued that because the law operates only in "a single statutorily defined region" of the country, it was geographically non-uniform and violated the uniformity clause. *Id.* at 158, 95 S.Ct. 335. The Supreme Court found no merit to the uniformity challenge because it overlooked "the flexibility inherent in the constitutional provision." *Id.* The *Reg'l Rail Reorganization Act Cases* interpreted the uniformity clause, not in terms of geographic uniformity, but rather as requiring that "the Rail Act apply equally to all creditors and all debtors." *Id.* at 160, 95 S.Ct. 335.

In *Railway Labor Executives' Ass'n v. Gibbons*, 455 U.S. 457, 469, 102 S.Ct. 1169, 71 L.Ed.2d 335 (1982), the Supreme Court held that the uniformity requirement is neither a "straightjacket that forbids Congress to distinguish among classes of debtors," nor does it "require the elimination of any differences among the States in their laws." In *Gibbons*, the Supreme Court for the first time invalidated a bankruptcy law for lack of uniformity because its provisions covered "neither a defined class of debtors nor a particular type of problem, but a particular problem of one bankrupt railroad." *Id.* at 470–71, 102 S.Ct. 1169.

---

16. Geographic uniformity requires that a statute apply consistently to all similarly situated persons throughout the United States. A statute may be geographically uniform even if implementation of the statute varies from state to state. *See Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 62 L.Ed. 507 (1918).

The Court explicitly noted, however, that its holding did "not impair Congress' ability under the Bankruptcy Clause to define classes of debtors and to structure relief accordingly." *Id.* at 473, 102 S.Ct. 1169. As one court has recently explained in finding § 522(b)(3)(A) does not violate the uniformity clause: "Geographical uniformity and class uniformity are separate concepts, and when a law is applied to a specified class of debtors, the uniformity requirement is met so long as the law applies uniformly to that defined class of debtors." *In re Chandler,* 362 B.R. 723, 728 (Bankr.N.D.W.Va.2007), citing *Gibbons,* 455 U.S. at 473, 102 S.Ct. 1169 (footnote omitted).

■■■ A federal law is constitutionally uniform, even though its effect may vary due to differences in state law, if it treats the defined class uniformly. *Gibbons,* 455 U.S. at 473, 102 S.Ct. 1169 (to survive scrutiny, "a law must at least apply uniformly to a defined class of debtors"). Because the uniformity clause is flexible and encompasses the concept of class, as well as geographic uniformity, Congress may enact bankruptcy laws that treat defined classes of debtors or creditors differently, so long as the classification scheme applies in the same manner to all similarly situated parties. *See id.* Section 522(b)(3)(A) is such a classification statute. It creates special exemption rules for a specific class of debtors who have relocated from one state to another within a defined period of time. *In re Chandler,* 362 B.R. at 729. The law is uniform because it applies to all debtors who have not been domiciled in the forum state for at least two years preceding bankruptcy, regardless of where a bankruptcy petition is filed.

The Trustee's argument that § 522(b)(3)(A) burdens the parties and courts by requiring them to familiarize themselves with out-of-forum exemption laws is unpersuasive. Parties to a bankruptcy case should not be surprised to be confronted with the application of laws of various states. Even before BAPCPA's enactment, there were differences between the venue statute and the exemption statute which required courts to apply out-of-forum exemption laws. *See, e.g., Morad v. Xifaras (In re Morad),* 323 B.R. 818, 826 (1st Cir. BAP 2005) (affirming Massachusetts bankruptcy court's holding that debtor was not a domiciliary of Florida for the requisite time and could not claim that state's exemptions). Furthermore, parties to a bankruptcy case are frequently confronted by issues determined by non-forum state law, such as valuation, contract interpretation, and perfection of security interests in real and personal property. Congress's choice to make state law applicable to certain parties or types of transactions may impose more work on parties to a bankruptcy case, but it does not violate the uniformity provision of the bankruptcy clause. *See St. Angelo v. Victoria Farms, Inc.,* 38 F.3d 1525, 1531 (9th Cir.1994) ("A bankruptcy law may have different effects in various states due to dissimilarities in state law as long as the federal law itself treats creditors and debtors alike.").

The Trustee's claim that § 522(b)(3) impermissibly permits one state to exercise sovereignty over another confuses one state's attempt to impose its rules upon another with Congress's determination to use state law as the law to be applied to a particular party or transaction. *See In re Arrol,* 170 F.3d at 936 ("[F]ederal bankruptcy law has prescribed the applicable exemptions—in this case, the exemptions provided by California law. This is a federal choice of law in which the choice has been made."). In *Stellwagen,* the Supreme Court upheld Congress's grant of power to the trustee to utilize state statutes for the benefit of creditors even

though results will vary from state to state:

> Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the State in certain particulars, although such recognition may lead to different results in different States. . . . Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the Act is not alike in all the States.

245 U.S. at 613, 38 S.Ct. 215, citing *Moyses,* 186 U.S. at 188–90, 22 S.Ct. 857.

### CONCLUSION

■ Congress may enact a bankruptcy law to address a particular problem, so long as the law operates in every place in the country in the same way. Even though the different laws of the states "may lead to different results in different states," it does not run afoul of the uniformity provision. *Stellwagen,* 245 U.S. at 613, 38 S.Ct. 215; *see also St. Angelo v. Victoria Farms, Inc.,* 38 F.3d at 1531. Section 522(b)(3) is such a law. For the foregoing reasons, we AFFIRM.