**Deborah Rosetta SHELL, Debtor.**

No. 11–22848 JPK.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Aug. 14, 2012.

Laura R. Rochet, Peter Francis Geraci,
Attorney at Law, Chicago, IL, for Debtor.

*MEMORANDUM OF DECISION RE-
GARDING THE CHAPTER 7
TRUSTEE'S OBJECTION TO EX-
EMPTIONS*

J. PHILIP KLINGEBERGER,
Bankruptcy Judge.

The matter before the Court is a contested matter arising from the objection of Trustee Stacia Yoon ("Trustee"), as trustee of the Chapter 7 bankruptcy estate of Deborah Rosetta Shell ("Shell"), to the exemptions the Debtor claimed in her Schedule C. Shell filed her petition for relief on July 22, 2011, at which time she was a resident of the state of Indiana; however, she didn't reside in Indiana for the full 730 days prior to filing of her petition, and pursuant to 11 U.S.C. § 522(b)(3)(A), Shell had to refer to the exemption law of the state in which she had resided previously—which was Illinois. In claiming her exemptions, Shell utilized the federal exemptions set out in 11 U.S.C. § 522(d) under the theory that Illinois' opt-out law only applies to the residents of that state, and she wasn't a resident of Illinois on the date of filing of her bankruptcy petition. On September 2, 2011, the Trustee objected to Shell's exemptions on the basis that she must claim the exemptions established under Illinois law.

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and N.D.Ind. L.R. 200.1. The matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## THE FACTUAL RECORD/ISSUES PRESENTED

The Trustee and Shell filed a stipulation of facts on November 16, 2011, which constitutes the entire record upon which this contested matter is to be determined. The stipulation states:

1. On July 22, 2011, the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.

2. As disclosed on the Debtor's Statement of Financial affairs # 15, and at the first meeting of creditors, the Debtor lived in Illinois from 2005 until April 2011.

3. The Debtor resided in Indiana on her petition date.

4. On her Schedule C, the Debtor invoked the exemptions set out in 11 U.S.C. § 522.

5. On September 2, 2011, the Trustee filed an objection to the Debtor's exemption, arguing that she should have used the State of Illinois exemptions.

Pursuant to an order of the court dated October 21, 2011, on January 13, 2012, each party filed a memorandum of law concerning their respective positions.

The issue is quite simply the exemption law applicable to Shell's circumstances pursuant to 11 U.S.C. § 522(b)(3)(A).

## LEGAL ANALYSIS

Pursuant 11 U.S.C. § 522(b) a debtor can exempt certain property from the bankruptcy estate. Under § 522(b)(1), the debtor may utilize either the exemptions established by federal law, or the exemptions established by the particular state in which the debtor is domiciled, as determined under 11 U.S.C. § 522(b)(3)(A). If the state so determined has "opted-out" of the federal exemption scheme and establish its own exclusive exemptions [*See*, 11 U.S.C. § 522(b)(2) ], a debtor is primarily limited to the exemption laws of that particular state. The state whose exemption laws apply, based upon the debtor's domicile, is provided for by 11 U.S.C. § 522(b)(3)(A), which states:

3) Property listed in this paragraph is—

(A) subject to subsections (*o*) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730–day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period or for a longer portion of such 180–day period than in any other place;

The final or "hanging sentence" of § 522(b)(3) provides as follows:

If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d). [i.e., the federal exemptions].

In this case, Shell filed her petition for relief under Chapter 7 of the United States Bankruptcy Code on July 22, 2011. There is no dispute that at that time of filing she was a resident of the State of Indiana. However, as reflected in the Stipulation, Shell was unable to utilize the exemptions established by the state of Indiana due to the fact that she was a resident of, and domiciled in, Illinois from 2005 all the way up to April 2011 (less than three months prior to the bankruptcy filing). As a result, Shell must refer to Illinois law in order to determine the property which she could exempt from her bankruptcy estate.

The issue formed is the effect of 11 U.S.C. § 522(b)(3)(A) with respect to Shell's exemption elections.

■ Illinois is an "opt-out" state. The Illinois opt-out statute, found at 735 ILCS § 5/12–1201, provides as follows:

§ 12–1201. Bankruptcy exemption. In accordance with the provision of Section 522(b) of the Bankruptcy Code of 1978, (11 U.S.C. 522(b)), residents of this State shall be prohibited from using the federal exemptions provided in Section 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. 522(d)), except as otherwise may be permitted under the laws of Illinois.

This provision prohibits residents of the state of Illinois from utilizing the federal exemptions.

Shell first cites authority in support of the proposition that Illinois' exemptions have an implied residency requirement—in other words, if the debtor is residing in another state, the exemptions cannot be used. Next, Shell posits that since Illinois' opt-out statute does not expressly prohibit non-residents from claiming the federal exemptions, she can choose whether or not to take advantage of the federal exemptions.

The Trustee's position is that the Illinois exemptions are not *explicitly* limited to the residents of the state and should therefore apply to the Debtor. The Trustee also argues that if this court were to interpret a state's opt-out law to never apply to a former resident, then the federal exemptions would always be the only exemptions available. According to the Trustee the result would be that, "[t]here would never be a reason to have created the safe harbor provided by § 522(b)(3)(C)." In other words, such an interpretation would render this provision superfluous.

As Trustee Yoon presaged in the last paragraph of her legal memorandum, the court is going to off on a different track than that blazed by the parties' memoranda. In doing so, the court joins a definite minority position as to the construction of 11 U.S.C. § 522(b)(3), particularly of 11 U.S.C. § 522(b)(3)(A), but an established and well-considered position nevertheless.

In support of her argument that Illinois' exemptions have an implied residency requirement, Shell relies on the case of *In re George*, 440 B.R. 164 (Bankr.E.D.Wis. 2010). In that case, a Wisconsin bankruptcy court had to determine the same issue that this court is now facing. The court found that the Illinois exemptions have an implied residency requirement. The court reasoned as follows:

> However, a residency requirement may be implied by the structure and function of the applicable statutes. The Illinois exemptions are exemptions from the enforcement of judgments rendered by Illinois state courts, and the exemption provisions appear in Article XII of the Code of Civil Procedure governing those courts. Specifically, 735 Ill. Comp. Stat. 5/12–111 states that a judgment is not binding on personal property until a certified copy of the judgment is delivered to the sheriff or other proper officer to be served, and 735 Ill. Comp. Stat. 5/12–112 provides that "all of the goods and chattels (except such as is by law declared to be exempt) of every person against whom any judgment has been entered … shall be liable to be sold upon such judgment." Clearly an Illinois sheriff acting under the auspices of an Illinois state court would not have the authority to execute and levy on a motor vehicle owned by a Wisconsin resident and located in Wisconsin. *See Filkins v. Nunnemacher*, 81 Wis. 91, 51 N.W. 79, 80–81 (1892) (stating "a court cannot endow its officials with powers beyond its own jurisdiction. The stream cannot rise higher than the fountain-head."). That Illinois exemptions apply only to residents within the jurisdiction of the Illinois state courts appears obvious from the context of the statutes.
>
> More evidence of the application of the exemptions to residents only is found in 735 Ill. Comp. Stat. 5/12–1101 which provides:
>
> Whoever, whether principal, agent or attorney, with intent thereby to deprive *any bonafide resident of the State of Illinois of his or her rights, under the statutes of Illinois on the subject of the exemption of property from levy and sale on a judgment,* or in attachment or garnishment, sends, or causes to be sent out of the State of Illinois any claim for a debt to be collected by proceedings in attachment, garnishment, or other process, when the creditor, debtor or person, or corporation owing for the earnings intended to be reached by such proceedings in attachment are each and all within the jurisdiction of the courts of the State of Illinois, shall be guilty of a petty offense and fined for each and every claim so sent in any sum not less than $10 nor more than $50. (emphasis supplied).
>
> This provision speaks directly of protecting the exemption rights of an Illinois resident, even if the exemption provision itself does not. The context of the exemption statute in the state court judgment enforcement provisions and the express reference to Illinois residents in § 12–1101 strongly suggests that only Illinois residents can claim Illinois exemptions. It follows that the Debtor in this case does not qualify to claim the Illinois exemptions as she no longer resides in Illinois. Since she cannot claim the Illinois exemptions as they are limited to residents, and she has not lived in Wisconsin long enough to claim the Wisconsin exemptions, the Debtor qualifies to select the federal exemptions under the safe harbor provision of the hanging paragraph.

*In re George,* 440 B.R. at 166–67.

Relying on an implied residency rationale, the court held that the hanging sentence of § 522(b)(3)(C) applied. The court reasoned that since non-residents did not fall under the Illinois statute, the state

exemptions could not apply and as a result the federal exemptions could be utilized as a fall back. However, the court in that case acknowledged that a number of state legislatures had explicitly limited their exemptions to the residents of that particular state—but that Illinois did not:

> Some states expressly confine their exemptions to residents or to property located within the state. For example, the Wisconsin exemption statute provides: "A resident is entitled to the exemptions provided by this section. A nonresident is entitled to the exemptions provided by the law of the jurisdiction of his or her residence." Wis. Stat. § 815.18(5). North Carolina limits its exemptions to residents: N.C. Gen.Stat. § 1C–1601(a) declares that "[e]ach individual, *resident* of this State, who is a debtor is entitled to retain [certain real and personal property as set forth in §§ 1C–1601 (a)(1)-(12) ] free from the enforcement of claims of creditors ..." (emphasis supplied). Colorado law likewise provides that Colorado exemptions are only available to Colorado residents. *See In re Underwood,* 342 B.R. 358, 360 n. 1 (Bankr.N.D.Fla.2006). Other state statutes are not as clear. Illinois law does not expressly limit personal property exemptions to state residents. The exemption statute under which the Trustee claims the Debtor must select her exempt property is 735 Ill. Comp. Stat. 5/12–1001 which states: "[t]he following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent...."

*In re George,* 440 B.R. at 166.[1]

In response to this argument the Trustee cites the case of *In re Fernandez,* 2011 WL 3423373 (Bankr.W.D.Tex.2011). In *Fernandez,* the debtor was a resident of Texas at the time he filed his petition for relief but was not a resident for the full 730–day period. Thus, Nevada's exemptions applied. Due to the favorable homestead exemption provided under Nevada law, the debtor argued that Nevada's exemptions should apply, to which the Trustee objected.[2] The *Fernandez* court provided an insightful history of § 522 prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and of the case law which has since developed:

> Prior to 2005, the bankruptcy statute specified that the applicable state exemption law was the law of the state that had been the debtor's domicile for the greater part of 180 days preceding the filing of the petition. 11 U.S.C. § 522(b)(2)(A) (2004); *Stephens v. Holbrook (In re Stephens),* 402 B.R. 1, 3 (B.A.P. 10th Cir.2009). In 2005, through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress amended this section of the bankruptcy laws to extend the time that a debtor must live in a state before being able to claim that state's exemptions, from the greater part of 180 days to 730 days. *See* BAPCPA, Pub. L. No. 109–8, § 307, 119 Stat. 23, 81 (2005); *In re Varanasi,* 394 B.R. 430, 434 n. 5 (Bankr.S.D.Ohio 2008) (citing *In re Virissimo,* 332 B.R. 201, 203 (Bankr.D.Nev.2005)).

> Congress's purpose in extending the "look-back" window was to prevent debtors from forum-shopping by moving to a state with generous exemption laws, living there for 91 days (that being the

---

1. That court also made the alternative finding that the Illinois opt-out provision simply does not apply to prevent a nonresident from claiming the federal bankruptcy exemptions, i.e. the plain meaning of the statute.

2. Note that the *Fernandez* case differs from the one currently before the court in that the trustee was arguing that Nevada's exemptions could **not** be applied extraterritorially.

greater part of 180 days), and then filing for bankruptcy. *Stephens,* 402 B.R. at 3 n. 8; *Drummond v. Urban (In re Urban),* 375 B.R. 882, 889 (B.A.P. 9th Cir. 2007) (citing H.R.Rep. No. 109–31, pt. 1, at 15–16 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 102) (describing BAPCPA as closing the "so-called 'mansion loophole,'" whereby debtors relocate to states where they can shield virtually all of the equity in their homes from their creditors); *In re Bingham,* No. 06–40990, 2008 WL 186277, at *5 (Bankr.D.Kan. Jan. 18, 2008) ("the changes to the domicile requirements for exemptions were primarily, if not solely, intended to prevent debtors from" forum-shopping to protect assets under certain states' more generous bankruptcy exemptions).

\* \* \*

The effect of the amended statute is that if a debtor has not lived in one state for the requisite 730 days preceding the filing of the petition, the law requires the debtor to use the exemption laws of the state where he lived for the greater part of the 180 days preceding that 730 day period. *Stephens,* 402 B.R. at 4. If that state's opt-out law prevents a debtor from choosing the federal exemptions and also prevents the debtor from using the state exemptions, then under the so-called "savings clause" or "hanging paragraph" at the end of the quoted language above, the debtor can use the federal exemptions as a fall-back. *Urban,* 375 B.R. at 889.

The application under the 730 day lookback provision of the exemption laws of a debtor's former state of domicile to the debtor and his property, which after the debtor's move are both likely located outside the state, is known as the extraterritorial application of state exemption law. *Stephens,* 402 B.R. at 4–5. As some authorities have recognized, extraterritoriality of exemption laws is best split into two aspects: whether a nonresident can use a state's exemption laws, and whether a state's exemption laws can apply to property outside the state. *See In re Arrendondo–Smith,* 436 B.R. 412, 417 (Bankr.W.D.Tex.2010); *In re Calhoun,* 47 B.R. 119, 122–23 (Bankr.E.D.Va.1985); Hon. W.H. Brown et al., *Bankruptcy Exemption Manual* § 4:6 (2010 ed.). Both aspects can affect the ultimate determination of whether a nonresident may claim protection of property, depending on the precise factual scenario. As one treatise has explained it,

There are two major issues presented by the domiciliary changes in section 522(b). One is whether the applicable state's exemptions, typically the homestead, may be used on property located outside of that state.... A second, and separate, issue is whether a state permits use of its exemptions only by its residents or domiciliaries.... In other words, the domiciliary look-back presents questions not simply of which state's exemptions control but whether those exemptions may be used by a debtor who is no longer domiciled in, or a resident of, that state. Brown et al., *supra,* § 4:6.

Although this treatise describes the issue as one created by BAPCPA, the issue of extraterritoriality is not a new one, and courts occasionally faced it pre-BAPCPA, either a result of moving debtors or simply from debtors trying to claim exemptions on property located in other states. *See, e.g., Arrol v. Broach (In re Arrol),* 170 F.3d 934, 935–36 (9th Cir.1999); *In re Schulz,* 101 B.R. 301, 302 (Bankr.N.D.Fla.1989); *Calhoun,* 47 B.R. at 121–22; *see also In re Garrett,* 435 B.R. 434, 439 n. 5 (Bankr.S.D.Tex. 2010) (noting the similarity of the issue pre-and post-BAPCPA); Dale Joseph Gilsinger, Annotation, *Extraterritorial*

*Application of State's Homestead Exemption Pursuant to Bankruptcy Code § 522* §§ 4–5, 47 A.L.R. Fed. 2d 335 (2010) (listing other pre-BAPCPA cases finding both for and against extraterritoriality). However, the changes wrought by BAPCPA have caused the issue to arise much more frequently. *See* [*In re*] *Fernandez,* 445 B.R. [790] at 803 [ (Bankr.W.D.Tex.2011) ].

After BAPCPA, when the issue of extraterritorial application of state exemption law arises, it usually does so in one of two ways: first, a debtor seeks to use the state exemptions of his former state of domicile while he is residing in a new state or for property located out of state, *see, e.g.,* [*In re*] *Williams,* 369 B.R. [470] at 471 [ (Bankr.W.D.Ark.2007) ]; or second, the debtor seeks to use the federal exemptions but the opt-out law of his former state of domicile prevents him from doing so. *See, e.g.,* [*In re*] *Camp II,* 631 F.3d [757] at 759 [ (5th Cir. 2011) ]. The issue involved in this appeal relates to the first type of situation. Because Debtor had not lived in Texas for 730 days prior to filing his petition, he had to use the exemption law of the state where he lived for the 180 days preceding 730 days prior to filing his petition, that being Nevada. However, as a result Debtor was forced to claim the homestead exemption from a state where he no longer lives, and where his property is not located. Trustee objected to Debtor's claimed homestead exemption for this reason, arguing that Debtor could not use the "exemption of homestead property under Nevada exemption statutes for property located in Texas." Trustee's Objection to Debtors' Schedule–C Property Claimed as Exempt, *In re Alfred L. Fernandez,* No. 09–32896–C (Bankr.W.D.Tex. June 11, 2010), ECF No: 15. The issue is a significant one for Debtor, because his assets include approximately $71,000 in equity in his home in El Paso, Texas, and the Nevada and federal homestead exemptions protect the value of his homestead to different degrees. The Nevada homestead exemption protected up $550,000 of home equity, while the federal homestead exemption as of the date Debtor filed his petition protected only $20,200 of home equity. *Fernandez,* 445 B.R. at 794; Appellant's Brief 7. Debtor argues that he may use the Nevada state exemptions either because any possible state law limits upon extraterritorial effects of state exemption law are preempted by federal bankruptcy law, or because as a matter of state law Nevada's exemptions are not limited to resident debtors or property located in Nevada. Appellant's Brief 20. Trustee contends that the bankruptcy court below correctly determined that state exemption laws can never have extraterritorial effect, regardless of what any state's law may indicate. Appellee's Brief 6–10.

*In re Fernandez,* 2011 WL 3423373 at *3–*5.

The *Fernandez* court then reviewed the three predominant approaches courts use to determine whether the exemption laws of a specific state have extraterritorial application, stating:

The issue on appeal is at its core one of statutory interpretation: what was Congress's intent when it required debtors to use exemption laws of their former state of domicile? " 'The objective of a court called upon to interpret a statute is to ascertain congressional intent and give effect to legislative will.' " *Cotroneo v. Shaw Env't & Infrastructure, Inc.,* 639 F.3d 186, 194 (5th Cir.2011) (quoting *Davis v. Johnson,* 158 F.3d 806, 810 (5th Cir.1998)). The Court begins with the language of the statute, as "[t]he Supreme Court has repeatedly counseled

that in statutory interpretation, 'courts must presume that a legislature says in a statute what it means and means in a statute what it says.'" *United States v. Johnson,* 632 F.3d 912, 922 (5th Cir. 2011) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). "When the statutory 'language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,* 548 U.S. 291, 296–97, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). In addition, courts must read a " 'statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous.'" *Waggoner v. Gonzales,* 488 F.3d 632, 636 (5th Cir.2007) (quoting *Bustamante–Barrera v. Gonzales,* 447 F.3d 388, 397 (5th Cir.2006)).

The plain language of the statute unfortunately does not resolve the issue. The most literal interpretation of the language allows Debtor to exempt[:]

any property that is exempt under ... State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition, or if the debtor's domicile has not been located in a single State for such 730–day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period. 11 U.S.C. § 522(b)(3)(A).

Here, that means Debtor is allowed to exempt property that is exempt under Nevada law, since that is where he lived for the 180 day period prior to the 730 day period preceding the filing of his petition. But this is ambiguous as to precisely how Nevada state law should be applied. Should the Court strictly construe the phrase "is exempt" and look to what Nevada courts would allow debtors to exempt in non-bankruptcy actions? Should the Court look to Nevada law to see if Nevada would permit out-of-state property to be exempt in bankruptcy? Or should the Court treat the subsection as a choice of law provision, and simply apply the categories and amounts of Nevada exemptions to Debtor's bankruptcy estate, paying no attention to any potential limitations Nevada law might impose on applying Nevada law outside Nevada? The statute's terse command to determine what "is exempt under ... State" law provides no clear answer.

A split in the case law on how to apply the rule reflects this ambiguity. At present, after approximately four years of cases interpreting the statute as amended by BAPCPA, courts and commentators have split into essentially three groups of opinion on how to apply this provision. The first interpretation, which the Court terms the anti-extraterritoriality interpretation, maintains that state exemption laws can never apply extraterritorially. Therefore, in bankruptcy proceedings, to the extent that a debtor is no longer domiciled in a state or his property is no longer located there, that state's exemption laws are inapplicable to him and he must instead rely on the federal exemptions. It appears that the bankruptcy court below is currently the only federal court to interpret the statute in this manner. *See Fernandez,* 445 B.R. at 816. The second view, held by the majority of courts to consider the issue, holds that while states may not apply their exemption laws outside their borders, in the bankruptcy context it is the federal government giving the laws extraterritorial ef-

fect, so it is permissible to apply state exemption laws to nonresidents and out-of-state property to the extent that the state laws, by their terms, allow for it. *See, e.g., Arrol,* 170 F.3d at 935–36; *Stephens,* 402 B.R. at 4–6. The Court terms this the state-specific interpretation. Finally, the third view, which a few courts have endorsed, holds that a state's exemption laws may be applied to non-residents and to out-of-state property, regardless of whether that state's laws allow for such extraterritorial effect or not. *See, e.g., Garrett,* 435 B.R. at 451–52. The interpretation has been termed the preemption view. *See* Laura B. Bartell, *The Peripatetic Debtor: Choice of Law and Choice of Exemptions,* 22 Emory Bankr. Dev. J. 401, 417, 420.

*In re Fernandez,* 2011 WL 3423373 at *5–*7.

■ The court has set out the principal cases upon which the parties respectively rely to state the two primary lines of authority applicable to the issue before the court. The problem with the analysis of both *George* and *Fernandez* is that while they place the debtor in the state ordained by 11 U.S.C. § 522(b)(3)(A) during the applicable 180 day period, they then apply the debtor's factual circumstances as of the date of the filing of the petition to that placement. With all due respect to the *George* and *Fernandez* adherents, the only way to make real sense of 11 U.S.C. § 522(b)(3) is to place the debtor in a state ordained by 11 U.S.C. § 522(b)(3)(A) during the applicable 180 day period—if that is possible under applicable laws which determine domicile—*and to then apply the actual factual circumstances of the debtor at the time of placement* to the issue of domicile.

■ The place to begin is with 11 U.S.C. § 522(b) itself. The Seventh Circuit Court of Appeals in the case of *United States v. Balint,* 201 F.3d 928, 932–33 (7th Cir.2000) outlined the rules of statutory construction:

When we interpret a statute, we look first to its language. *Pittway Corp. v. United States,* 102 F.3d 932, 934 (7th Cir.1996). If that language is plain, our only function is " 'to enforce it according to its terms.' " *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). The plain meaning of a statute is conclusive unless " 'literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *Ron Pair,* 489 U.S. at 242, 109 S.Ct. 1026 (quoting *Griffin v. Oceanic Contractors,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Therefore, our interpretation is guided not just by a single sentence or sentence fragment, but by the language of the whole law, and its object and policy. *See Grammatico v. United States,* 109 F.3d 1198, 1204 (7th Cir.1997) (citing *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 12 L.Ed. 1009 (1849)). Further, we may adopt a restricted rather than a literal meaning of a word where acceptance of the literal meaning would lead to absurd results. *See Chicago Transit Auth. v. Adams,* 607 F.2d 1284, 1289–90 (7th Cir.1980); *see also Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965).

Additionally, courts should avoid statutory constructions that render a provision superfluous. *Kopec v. City of Elmhurst,* 193 F.3d 894, 903 (7th Cir.1999) (citing, *Hohn v. United States,* 524 U.S. 236, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998)).

The court endorses the third view—the preemptive construction—discussed in *Fernandez,* and eschews the convoluted

analysis of both *George* and *Fernandez* and of the cases which adopt either of their frameworks. This is a very simple case in terms of statutory construction. The court concurs with the result in the decisions in *In re Camp*, 396 B.R. 194 (Bkrtcy.W.D.Tex.2008) [rev. 631 F.3d 757 (5th Cir.2011) ] and *In re Garrett*, 435 B.R. 434 (Bkrtcy.S.D.Tex.2010), and particularly endorses and adopts the analysis of the Honorable Craig A. Gargotta in *Camp* as to the federal pre-emption effected by 11 U.S.C. § 522(b)(3)(A).

■ 11 U.S.C. § 522 is a federal law which provides exemptions allowable in the federal bankruptcy arena. In terms of determining the scope of those exemptions, § 522 references state exemption laws as potential choices of law concerning exemptions to be allowed, a not-unusual scheme under a Bankruptcy Code which essentially provides a framework which is structurally completed in many contexts by the application of state law to a number of issues which arise in bankruptcy cases. Think of the bankruptcy exemption election as a highway construction project funded by federal funds. The federal law provides specifications for the scope of the project and certain matters concerning execution of the project; state authorities control the construction and completion of the project. Thus viewed, in the context of 11 U.S.C. § 522(b)(3)(A), a debtor's basic exemption choice is decreed by the federal framework; however, in the context of this case (in which the debtor was not domiciled in one state for the entirety of the 730 days preceding the filing of the bankruptcy petition), it is the law of the state in which the debtor was domiciled for the longer part of the 180 days preceding the 730 days before the filing of the petition that determines the debtor's exemption entitlement. The federal control of the project *places the debtor in a place during the 180 day period* for the purpose of the federal foundational bankruptcy ex-

emption law. It is then the same straightforward process for determining exemptions as is generally provided by 11 U.S.C. § 522(b)(2), based upon the concept of "domicile". Thus is completed the federal bankruptcy exemption roadway project. The "place in which the debtor's domicile has been located ..." in 11 U.S.C. § 522(b)(3)(A) is the place decreed *by federal law* as the place of the debtor's domicile for the purposes of the federal law of bankruptcy exemptions, and it is irrelevant to this federal structural placement whether or not the debtor is *in fact* a resident of that state on the date the petition is filed: the focus is the ***domicile*** of the debtor—*if any there be*—as that concept will usually be defined by the state in which the debtor is placed, *based upon the factual circumstances of the debtor in relation to the issue of "domicile" which existed during the 180 day period.* This makes perfect sense to avoid the forum-shopping for exemptions that occurred pre-BAPCPA by debtors' moves—to say Texas, Florida, Nevada or a few other states—by which debtors sought to establish a domicile for 91 days in a state primarily to take advantage of a homestead exemption law. This construction is clearly in accord with the construction necessary to give full effect to, and make sense of, a statute which is *not in any manner ambiguous.* It must be borne in mind that the purpose of the BAPCPA amendment was to avoid the effects of exemption forum shopping, by placing the debtor back where the debtor was before potential exemption forum shopping took place, and causing the debtor to be reviewed under the principles of "domicile" at that place and time.

Moreover, the phrase "that is applicable on the date of the filing of the petition to the place ..." in 11 U.S.C. § 522(b)(3)(A) is not meant to compel the intricate and obtuse analysis engaged in by a number of courts as to the extra-territorial applica-

tion of an exemption statute to property not within the borders of a state, or as to the availability of a state's exemption statute to a non-resident. That phrase simply states exactly what it says: once placed, a debtor—if then deemed domiciled in a state under that state's law—is subject to the exemption law of that state as that law was effective on the date of the petition, not that which was effective on some prior date, e.g., the last date upon which the debtor was in fact domiciled in that state. States change their exemption laws, a fact of which Congress was surely aware. Posit a debtor who lived in South Dakota for the majority of the 730 day period prior to her filing of bankruptcy in a Mississippi bankruptcy court, but who moved to Mississippi 3 months before her petition was filed. Posit further that the debtor lived in/ was domiciled in South Dakota exclusively for the 180 days prior to the foregoing 730 day period. Posit further—and this *does* happen—that South Dakota's exemption statutes applicable to a bankruptcy case were amended in such a way that the "old" exemption laws applied during the 180 day period preceding the 730 day period, but new laws applied on the date of the debtor's petition. Placing the debtor in South Dakota during the 180 day period creates a question as to which exemptions apply—perhaps not a very good legal argument as to prior law being applicable, but a cognizable argument nevertheless. The simple, straightforward intent of the phrase "that is applicable on the date of the filing of the petition to the place ..." in 11 U.S.C. § 522(b)(3)(A) is that the amended exemptions apply.

There appears to be a great deal of consternation in reported decisions concerning the import of the last sentence of 11 U.S.C. § 522(b)(3), in an effort to reconcile it with the base directive of 11 U.S.C. § 522(b)(3)(A), and thus give it some meaning and purpose. It has a meaning and purpose, just as it states. There,

there, little "dangling sentence", you are not an orphan at all. If for no other reason, the sentence has meaning in an admittedly unlikely—but yet possible—scenario. If a court calculates the "longer period" in 11 U.S.C. § 522(b)(3)(A) in terms of days, rather than lesser units of time—it is *possible* that a debtor lived in one state for 90 days prior to the 730 days before petition filing, and lived in one other state for the other 90 days; the debtor could have moved from one state to another late in the day on the 90th day. There would then be no state in which the debtor was domiciled for the "longer period" in 11 U.S.C. § 522(b)(3)(A). Admittedly a remote situation, but a possible one, and one which of itself saves the dangling provision from having no meaning.

But there's more to it. The concept of "domicile" is a legal conclusion, construed in different states in different ways, based upon any number of formulations by any number of reported decisions in any number of legally significant contexts. The base 730 day period is based on the concept of "domicile", and this concept of "domicile" also drives the 180 day period preceding the base 730 day period. Posit if you will the following, and send me an email if you know the answer to these issues under 50 states', the District of Columbia's and several protectorates' laws. Even under the base 730 day period (and then also with respect to the preceding 180 day period), where is a debtor's domicile located in the following contexts: (1) For the base 730 day period, the debtor has been a legal, but not naturalized, alien from Croatia, who for the entirety of the 730 days has had a job in New Jersey, but an apartment in New York city, but regularly returns to Croatia, yet intends to ultimately apply for citizenship; (2) The debtor, who resided in Utah prior to incarceration, has been incarcerated in the federal prison in Marion, Illinois for the three

years preceding the filing of the petition, but intends to return to Utah upon her release from prison; (3) The debtor is a truly itinerant person, who has driven his/her car or recreational vehicle from state to state, and has lived out of the car/vehicle, for the three years preceding the filing of the petition, but parks the car/vehicle in Georgia and then files a bankruptcy petition there; (4) The debtor has been in the service of our country as a member of the military overseas for the three years preceding the filing of the petition; *See, In re Garrett, supra;* (5) The debtor, who files a bankruptcy petition on July 1, 2012, is an American citizen from birth who lived in Indiana until the 89th day of the 180 day period which was 730 days before July 1, 2012, when he/she moved to Saudi Arabia on that 89th day and continued to continuously reside in Saudi Arabia due to a job location transfer; (6) The debtor, a citizen of Great Britain, moves to Massachusetts on a work visa 650 days before her petition is filed, with the intent to become a naturalized citizen of the United States. All of the foregoing classes of people are entitled, according to certain decisions, to file a bankruptcy petition under Title 11 of the United States Code. SO..... WHERE WERE THEY DOMICILED under the base 730 day period (and also with respect to the preceding 180 day period) under 50 states', the District of Columbia's and several protectorates' laws? The exemption election for these potential "wild cards" is the purpose of the forlorn, much abused dangling sentence, if state law applied pursuant to 11 U.S.C. § 522(b)(3)(A) does not establish a domicile for a debtor when a debtor is otherwise placed in a state: it was meant to avoid denying any exemptions whatsoever to persons who didn't otherwise fit into the federally decreed exemption scheme, because they might not be deemed to be domiciled in a particular state during the exemption determination period. This provision could very well have been entitled, "In case of Emergency—Break Glass" and is essentially a legislative safety net Congress created which ensures that a debtor entitled to file bankruptcy is not denied the use of exemptions. By its very terms, this clause is triggered *only* when a debtor is "ineligible for any exemption." This mandate makes it clear that Congress intended that debtors resort to the federal exemptions as a last resort, and not in a circumstance in which a debtor clearly was a resident—let alone a domiciliary—in "opt-out" states during the entirety of the 2 ½ years preceding the petition date.

Congress' goal in drafting the 2005 amendments to § 522 was to prevent, or at least to curb, what was perceived as rampant forum shopping under the former law.[3] The court notes that thirty-five states have opted-out of the federal exemption scheme. States such as Arizona, Colorado, Florida, North Carolina, North Dakota, South Dakota, Tennessee, Oklahoma, Oregon, Colorado and West Virginia have drafted opt-out statutes that similarly include the term "resident." Additionally, the opt-out statutes in the states of Delaware, Indiana, Nevada, New York, Ohio, and Wyoming refer to an individual domiciled in the state. Decreeing a domiciliary requirement based on the factual circumstances of the debtor *on the date of petition,* when the debtor was clearly a resident of, and domiciled in, an state opt-out state *for the longer period of the 180 days preceding the 730 day period preceding the date of the petition*[4] would allow debtors in relation to nearly half of the opt-out states to utilize the federal exemptions under certain circumstances, depending upon those states'

---

**3.** *See,* H.R.Rep. No. 109–31, pt.1, at 15–16 (2005), 2005 U.S.C.C.A.N. 88.

**4.** It gives one a headache to even say or read this phrase, doesn't it?

allowance of exemptions to a non-resident. This result is counter-intuitive and expands the safe harbor provision of § 522(b)(3) to a much broader, exemption forum shopping scheme than was intended by Congress. Adopting Shell's construction would allow a debtor who formerly resided in a state that explicitly opted out of the federal scheme to take advantage of the federal exemptions simply by manipulating moves in contemplation of bankruptcy filing, a form of forum shopping.[5] Shell was domiciled in one of two states since 2005, both of which opted out of the federal exemptions. The most absurd result which could be derived in this case is that Congress intended a person in Shell's circumstances to evade state opt-out exemption laws by some obtuse construction of 11 U.S.C. § 522(b)(3) that relies on an over-analysis of what is really a very simply construed statute. Admittedly, conflicts of law/ choice of law analysis is fun and intellectually stimulating. Concepts of extra-territorial application of laws are fun and intellectually stimulating. Dealing with Congress' intent with respect to construing many provisions of BAPCPA by and large is neither fun nor intellectually stimulating—it's onerous and intellectually draining. The issue in this case is one that is droll and easily resolved, by simply reading the statute in its proper context. Congress did not intend us to have fun with, or be overly stimulated by, 11 U.S.C. § 522(b)(3)(A).

Based upon the foregoing, the court determines that pursuant to 11 U.S.C. § 522(b)(3)(A), Shell was placed in the state of Illinois for the purpose of exemption election under 11 U.S.C. § 522: Shell was both domiciled in, and a resident of, Illinois throughout *the longer period of the 180 days preceding the 730 day period preceding the date of the petition.* Illinois is an "opt out" state", and the exemptions that apply to Shell's case are those of the State of Illinois which were effective on the date her bankruptcy petition was filed.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the objection filed by the Trustee to Shell's claimed exemptions is hereby sustained: Shell is subject to the exemptions of the State of Illinois applicable to an Illinois resident, effective as of July 22, 2011.

IT IS FURTHER ORDERED that Shell shall file an amended Schedule C, in accordance with this decision, within 28 days from the date of entry of the separate order/judgment concerning this decision.

---

**5.** This form of bankruptcy planning may seem extreme, but it is exactly the type of homestead exemption planning, particularly by wealthy debtors in financial distress, that caused the BAPCPA amendment of 11 U.S.C.

§ 522(b)(3)(A) ... never underestimate the machinations of extremely wealthy people and their bankruptcy counsel when the law is non-existent or ambiguous.